[No. 20495. In Bank. — September 2, 1889.]

# THE PEOPLE, RESPONDENT, *v.* W. T. C. ELLIOTT, APPELLANT.

CRIMINAL LAW — HOMICIDE — CHANGE OF VENUE — BIAS AND PREJUDICE — DISCRETION. — An application of a prisoner charged with murder for a change of venue upon the ground of bias and prejudice existing against him in the county, supported solely by his own affidavit, is addressed to the discretion of the court below, and a denial of the change will not be reversed, unless the record shows abuse of discretion.

ID. — PROOF OF BIAS AND PREJUDICE — APPLICATION FOR SUBPŒNAS — STATEMENT OF COUNSEL. — SHOWING UNDER OATH. — An application to the court for subpœnas for witnesses to prove a charge of bias and prejudice as ground for a change of venue, if unsupported by affidavit, and resting upon the mere oral statement of defendant's counsel as to what the witnesses have told him, is not such a legal showing as the court is bound to act upon. Subpœnas need not be issued upon the order of court unless it appears that the clerk has refused to issue them upon application, or that the attendance of witnesses could not be procured; and a legal showing must be made under oath of the facts necessary to call for the action of the court.

ID. — PRELIMINARY EXAMINATION — RIGHT OF ACCUSED TO COUNSEL — SETTING ASIDE INFORMATION. — It seems that the failure of the committing magistrate to give time for the employment of counsel by a defendant accused of murder, or to furnish him with counsel if unable to employ one, is not ground for setting aside an information for the offense; but if it appears that the defendant was fully informed of his right to counsel at all stages of the proceedings, and that he consented to the examination, after ample time had been given to procure counsel, without employing an attorney or expressing a desire to have one appointed, no such ground is shown to have existed.

ID. — EVIDENCE — BUSINESS OF DECEASED — PROTECTION OF OTHERS AGAINST DEFENDANT. — When it appears that the homicide was committed upon premises in the occupation of the defendant, which were invaded by the deceased, who had previously assaulted and beat the defendant, no question is presented as to the right of the deceased to reside upon premises in the occupation of the defendant's divorced wife, and it is prejudicial error to allow the divorced wife of the defendant to state, against the objection of the defendant, that the business of the deceased upon her ranch was to protect herself and child against the defendant.

ID. — IMPEACHMENT OF WITNESS — DISCREPANCY OF TESTIMONY — IMPROPER REMARK OF JUDGE — ERROR WITHOUT PREJUDICE. — A remark of the judge upon the cross-examination of a witness, upon which it was attempted to show a discrepancy between her testimony at the trial and that given by her at the preliminary examination, that he could not see any discrepancy in the testimony, though improper, is not prejudicial error, if there was in fact no discrepancy.

ID. — INSTRUCTION — BURDEN OF PROOF — MITIGATION OR EXCUSE OF HOMI-
CIDE. — When the proof offered by the prosecution includes admissions
of the defendant tending to show that the homicide might only have
amounted to manslaughter, or might have been justifiable or excusable,
an instruction that the burden of proof is upon defendant to show cir-
cumstances of mitigation or excuse of the homicide when proved, which
omits the qualifying words contained in section 1105 of the Penal Code
as to proof on the part of the prosecution, is prejudicially erroneous.

ID. — REASONABLE DOUBT. — It is only necessary that a defendant produce
sufficient proof of circumstances of mitigation or excuse to raise a rea-
sonable doubt as to his guilt or as to the existence of the mitigating cir-
cumstances, and instructions to the effect that he must prove them by a
preponderance of evidence are prejudicially erroneous. (THORNTON, J.,
dissenting.)

APPEAL from a judgment of the Superior Court of Inyo County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*John R. Kittrell,* and *Thomas E. Haydon,* for Appellant.

*Attorney-General Johnson,* for Respondent.

WORKS, J. — The defendant was charged with the murder of one John B. White, convicted, and sentenced to death. His motion for a new trial was denied, and he appeals.

The following points are made in support of this appeal: 1. That the courr below erred in overruling the demurrer to the information; 2. That the court erred in denying the defendant's motion for a change of venue; 3. That the court erred in not allowing the defendant subpœnas for witnesses to prove the grounds of his motion to change the venue; 4. That the defendant was not duly committed by a magistrate; 5. Erroneous rulings of the court in the admission and exclusion of evidence; 6. Improper statements made by the court in the presence of the jury with respect to the testimony of certain witnesses; 7. That the court erred in certain of its instructions given to the jury; 8. That the verdict was against and contrary to the evidence.

1. Counsel for appellant have not called our attention in their brief to any defect in the information, and we have discovered none. The information must therefore be held to have been sufficient.

2. The motion for a change of venue was properly denied, for the reason that it was based upon the ground of bias and prejudice existing against the defendant in the county in which he was charged, and was supported by the affidavit of the defendant alone. Such an application is addressed to the discretion of the court below, and a denial of the change will not be reversed unless it clearly appears to this court that such discretion has been abused. (Pen. Code, secs. 1033, 1035; *People* v. *Fisher*, 6 Cal. 154; *People* v. *Mahoney*, 18 Cal. 180; *People* v. *Graham*, 21 Cal. 260; *People* v. *Congleton*, 44 Cal. 92; *People* v. *Goldenson*, 76 Cal. 328.) No such abuse of discretion is shown by the record.

3. The application to the court for the issuance of subpœnas for witnesses to prove the grounds of the application for change of venue was not supported by any legal showing, and was for that reason properly denied. It was based upon the mere statement of one of the attorneys for the defendant. The record states: "Counsel for defendant stated to the court, then in session, that he had talked with a number of persons in business of public official character, which brought them in daily or frequent contact with persons from all parts or sections of Inyo County, who had stated that everywhere in said county there was a widespread conviction that the defendant had, in cold blood and without justification or provocation, killed and murdered John B. White, an old, universally acquainted, and esteemed citizen of Inyo County; that great excitement and bitterness existed against defendant, W. T. C. Elliott; and that a widespread disposition to execute him by lynch-law prevailed throughout Inyo County, and that an impartial trial of defendant could not be reasonably anticipated;

but that such persons refused to give their affidavits voluntarily to that effect, but that if brought before the court under process of subpœna would candidly state such facts as they knew, and their unbiased opinions, and prayed the court to order subpœnas to be issued and served upon a number of credible persons occupying responsible offices of public places of business that defendant's counsel would name to the court."

These facts were not supported by the affidavit of the defendant or any one else in support of the application, and although the statement of counsel may have been entirely worthy of credit, the showing was not such as the court was bound to act upon. Beside, it does not appear that any such order was necessary. Subpœnas are not usually issued on the order of the court, but as a matter of course on application to the clerk. There was no showing that a subpœna had been applied for and refused, or that the defendant was unable to procure the attendance of witnesses. While great care should be exercised by the lower courts, especially in capital cases, to see that the defendant has a fair and impartial trial, and that every facility to that end is afforded him, he has no right to ask the court to act, except upon a legal showing, under oath, of the facts necessary to call for such action.

4. It is contended that the defendant's motion to set aside the information should have been granted. The motion was based upon two grounds, viz., that the warrant issued by the examining magistrate was insufficient, and that the defendant was not given time to procure counsel, and none was furnished him by the court at the preliminary hearing.

The last of these only is urged here. Conceding that the constitutional provision which makes it the duty of the court to appoint counsel for a defendant who is unable to employ one applies to preliminary examinations, it is shown by the affidavit of the district attorney that

the defendant was brought before the committing magistrate on the twenty-eighth day of April, 1888, and was then and there informed by said magistrate of his right to counsel at all stages of the proceedings, and of the nature of the charge against him; that by consent of the defendant the examination of the case was set for Monday, the seventh day of May, 1888, at ten o'clock, A. M., and that on said day said examination was had.

This certainly showed that the defendant was given ample time to procure counsel, and there is nothing in the record tending to show that he expressed any desire to have one appointed.

We do not think the ground stated was one on which the information could properly have been set aside, but if so, it was not sufficiently shown that any such ground existed.

5. The evidence was to the effect that the defendant killed the deceased by stabbing him with a butcher-knife. It also appears that the defendant's wife had lately procured a divorce from him; that she and her children by a former marriage were the owners of a ranch upon which there was a dwelling-house and a small cabin; that by the decree of divorce the wife was given the custody of their child, with the privilege to the defendant of visiting it three times a week, which he did, and he was given the right to occupy the cabin on his wife's ranch for two months; that the deceased was an uncle of the defendant's wife, and had, since the divorce, been staying with his niece a part of the time; that a few days before the death of the deceased, he, without sufficient provocation, brutally attacked and beat the defendant with a club, inflicting a painful wound on the head; that at that time, while the defendant was smarting from the effect of the blow, he threatened to kill the deceased, and afterward endeavored to borrow a revolver, saying that the deceased had beaten him once, and he wanted to be prepared for him; that

the time for which the defendant was allowed by the decree of the court to occupy the cabin was about to expire, and the deceased showed great anxiety for him to get out, and announced his purpose of removing him therefrom at once; that the defendant came to a man who was working on the ranch, and said to him, "I have stabbed White in the cellar; go up and look and see how he is getting along; I think he is badly hurt." That the man went to the cabin in a few minutes, and found the deceased lying a few feet from the cabin, on the road, dead, with a knife-wound in his chest; that the defendant passed on and notified others of the occurrence in substantially the same words, and requested that an officer be sent for to take him in charge.

The claim of the defendant at the trial was, that the deceased attacked him in the cellar of his cabin while he was in the act of cutting some meat that was hanging there, for his dinner, and that he stabbed him with the knife he was using; while it was claimed on the other side that the defendant had laid in wait, and killed the deceased while he was passing along the road.

There was no witness to the killing except the defendant. He testified: "I ran from the cellar door."

"Q. What occurred there? A. I was in the act of taking the meat down, and I heard a step on the cellar steps. I turned to look, and I saw the last foot of some one stepping off the lower step. I saw the side of the man approaching, and Mr. White shoved the door open.

"Q. How did he shove the door open? A. I can't say whether with his hand or with a stick.

"Q. What was then said or done? A. He said, 'What are you doing here? Get out of this cabin, or I will beat you to death, you son of a bitch.'

"Q. What did he do then? A. I said, 'Let me out,' and sprang for the door.

"Q. What did he do or say? A. He threw up his cane,

and as I made the spring, I drew my left arm in guard and struck with my right.

"Q. What did you strike with? A. With the knife that I had picked up.

"Q. What then occurred? A. Mr. White then ran out of the cellar, and I too.

"Q. Where did he go? A. He ran out and turned down north the road or lane.

"Q. What did you do? A. I ran from the cellar door.

"Q. Show where you ran. A. From the cellar door east down this way to where I saw Kinney plowing.

"Q. What did you say then? A. I told Kinney that White had attacked me in the old cellar, and that I had cut him, and for him to go and see him, as I was afraid that I had cut him badly."

There was contradictory testimony of physicians on the question whether White could have traveled from where the defendant claimed to have stabbed him to the place where his body was found, after having received the wound from which he died.

With this brief summary of the evidence we pass to a consideration of the questions presented as to the rulings in the admission and exclusion of evidence.

The divorced wife was a witness for the prosecution. She had testified to the striking of the defendant by White, and the threats then made by the former; and in explanation of the presence of White at the house, during his stay there, she was asked: "What was the business of John B. White, the deceased, on the Baker ranch when he made his last visit there, at the time he was killed?" This was objected to, on the ground that it was immaterial and irrelevant, and that it was hearsay, as she could only know it from declarations of White. Counsel announced that they desired to show that White was not a trespasser on the ranch, but was there for a lawful purpose, and a legitimate and chivalric one. The objection was overruled, and the witness answered: "He

was there for the protection of me and my child against W. T. C. Elliott," the defendant. The defendant moved to strike out the answer for the same reasons, and the motion was denied.

These rulings were erroneous. The evidence was entirely irrelevant. The case presented no question as to the right of the deceased to be on the ranch of Mrs. Elliott, and it could hardly be contended that it was necessary for him to attack the defendant in his cellar in order to protect Mrs. Elliott and her child. Nor can it be said that the testimony was harmless. The fact that it was necessary, or even supposed to be necessary, to protect the former wife and infant child of the defendant, as against him, could not but prejudice the minds of the jury; and as we regard the verdict of the jury, which must result in the severest penalty, as scarcely warranted by the evidence, we cannot say that the substantial rights of the defendant were not affected by this ruling.

It is further contended that the court did not allow the witness Fannie Elliott to be fully and freely cross-examined. We cannot concur in this view with the record before us. We trust that the cases are rare in which so much time is allowed to be taken up with immaterial and useless questions on cross-examination, many of which were repeated over and over again without apparent reason. If the court erred at all in this respect, it was in allowing the witnesses, including Mrs. Elliott, to be too freely cross-examined.

In the cross-examination of this witness it was attempted to show that there was a discrepancy between her testimony at the trial and that given by her at the preliminary examination. In the course of the examination of the witness on this point the court said: " I cannot see any discrepancy in her testimony upon the preliminary examination and her testimony to-day."

To this remark the defendant excepted, and contends that it was error. Certainly a statement of this kind by

the court was improper, but we, like the court below, cannot see the discrepancy, and for that reason must hold that the statement did the defendant no harm.

There are other points made relating to the evidence. We have given them careful attention, and without extending this opinion by noticing them in detail, we hold that none of such rulings were erroneous.

The court instructed the jury as follows: "The killing being proved, the burden of proving circumstances of mitigation to justify or excuse the homicide will devolve on the accused. Up to the moment when the killing is proved the prosecution must make out its case beyond a reasonable doubt. When the killing is proved, it devolves upon the defendant to show any circumstances in mitigation to excuse or justify by a preponderance of evidence on his part. That is, the killing being proved, the defendant must make out his case in mitigation to excuse or justify by some proof stronger in some appreciable degree than the proof of the prosecution. It must be in some degree, no matter how small, stronger than the proof of the prosecution on the other side.

"You are not bound to decide, in conformity with the declarations of any number of witnesses which do not produce conviction in your minds, against a less number, or against a presumption or other evidence satisfying your minds."

This instruction was erroneous.

The Penal Code provides (section 1105): "Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable." The latter clause of the section was entirely omitted from the instruction. The most im-

portant testimony of the prosecution was that of the admissions of the defendant that he had killed the deceased, and such admissions tended strongly to show " that the crime committed only amounted to manslaughter, or that the defendant was justifiable or excusable." Therefore it was important that the instruction, which cast the burden of proof on him, should be qualified in accordance with the section of the code on which it was based. (*People* v. *Arnold*, 15 Cal. 476, 482; *People* v. *Ah Kong*, 49 Cal. 7; *People* v. *West*, 49 Cal. 611; *People* v. *Smith*, 59 Cal. 607; *People* v. *Langton*, 67 Cal. 428.)

The instruction was erroneous for the further reason that it cast upon the defendant the burden of proving circumstances of mitigation or that justified or excused the commission of the homicide *by a preponderance of the evidence*, when it was only necessary that he should introduce evidence sufficient to raise a reasonable doubt as to his guilt or the mitigating circumstances. (*People* v. *Bushton, ante,* p. 160.)

It is contended that the verdict was contrary to the evidence. We have read the evidence carefully, and must confess to some surprise that a verdict of murder in the first degree, with the death penalty, should have been returned, but we are not prepared to say that the jury were absolutely wrong in their conclusion. It has a tendency, however, to convince us that the motion of the defendant to remove the cause to another county for trial was well founded, and should have been granted.

Judgment and order reversed, and cause remanded for a new trial.

MCFARLAND, J., SHARPSTEIN, J., PATERSON, J., FOX, J., and BEATTY, C. J., concurred.

THORNTON, J., concurring.—I concur in the judgment, on the ground that the court below erred in allowing the question quoted in the foregoing opinion to be put to

the witness Fannie Elliott, and in admitting her answer thereto. In my opinion, the instructions held to be erroneous in the foregoing are not erroneous. (*People* v. *Hong Ah Duck*, 61 Cal. 387; *People* v. *Raten*, 63 Cal. 421.)