[20942.   Department One.—July 12, 1893.]

## THE PEOPLE, RESPONDENT, *v.* CHARLES W. HAWES, APPELLANT.

CRIMINAL LAW—HOMICIDE—EXPERT EVIDENCE AS TO POWDER MARKS—IMMATERIAL EVIDENCE.—The distance at which the pistol carried by the defendant at the time of the homicide would produce powder marks upon the skin, is a proper subject, for expert testimony, though such testimony is immaterial where it is not proved that there were any powder marks upon the flesh of the deceased, and where it appears that he was so clothed at the time of the homicide that no powder marks could be produced upon the flesh.

ID.—QUALIFICATION OF EXPERT—CROSS-EXAMINATION.—Where a witness for the prosecution has testified that his experience for many years has qualified him to give an opinion upon a proper subject-matter of expert evidence, it is not error for the court to admit his evidence, if there be no cross-examination; and if the defendant desires to test the knowledge of the witness and the correctness of his statement as to his ability to give an opinion, he must cross-examine him before he is called upon to express an opinion.

ID.—DYING DECLARATIONS OF DECEASED.—Declarations of the deceased made at a time when he is shown to have been under a sense of impending death, with nothing to show a revival or subsequent hope of recovery, are admissible against the person accused of the homicide.

ID.—VEST OF DECEASED—QUESTIONS FOR JURY.—It is not error to admit in evidence the vest taken from the body of the deceased, after the same had lain in the grave for five months, where a witness has testified that it was in the same condition when taken from the body as when examined and brushed by him just after the death of the deceased. The credibility of the witness, and the question whether the appearance of powder marks had been destroyed by lapse of time and other circumstances, were matters for the jury to determine.

ID.—DECLARATIONS OF DEFENDANT.—The voluntary declarations of the defendant with reference to the shooting, made immediately after it occurred, are admissible in evidence.

ID.—IMPEACHMENT OF WITNESS—STIPULATION.—The defendant cannot impeach his own witness by evidence of his declarations produced contrary to a stipulation as to the testimony of such witness.

ID.—INSTRUCTIONS—PENAL CODE—BURDEN OF PROOF—REASONABLE DOUBT.—It is not error to read to the jury section 1105 of the Penal Code as to the burden upon the defendant of proving circumstances of mitigation or excuse, where other instructions fully and clearly insisted upon the right of the defendant to have in every step of the case all reasonable doubts as to his guilt, or as to any fact essential to show guilt, resolved in his favor.

ID.—RESULT OF FORMER TRIALS NOT TO BE CONSIDERED.—It is proper to instruct the jury that they are not to consider the number of trials which the defendant has had in which no verdict was obtained, and that they are to consider no other matters except the evidence and the instructions of the court.

ID.—REFUSAL OF INSTRUCTIONS.—It is not erroneous to refuse instructions upon matters already fairly presented to the jury, or instruction upon subjects unwarranted by the testimony, or an instruction singling out and giving prominence to certain portions of the evidence.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*S. F. Geil*, *W. A. Kearney*, and *John J. Wyatt*, for Appellant.

The court erred in allowing the witness, Dr. Wright, to testify at what distance the pistol must have been held from the person of the deceased to have left powder marks on his flesh, as he was not shown to be an expert. (Wharton's Criminal Evidence, sec. 408.) Moreover, his statement was simply his opinion or conclusion. (7 Am. & Eng. Encycl. of Law, pp. 492, 494, note; *Clark* v. *Fisher*, 1 Paige, 171; 19 Am. Dec. 402; *Stowe* v. *Bishop*, 58 Vt. 498; 56 Am. Rep. 569; *Pennsylvania Co.* v. *Conlan*, 101 Ill. 93; *Passmore's Appeal*, 60 Mich. 463; *Hallahan* v. *Railroad Co.*, 102 N. Y. 194; *Knoll* v. *State*, 55 Wis. 249; 42 Am. Rep. 702; *People* v. *Smith*, 93 Cal. 444; *People* v. *Mitchell*, 94 Cal. 550; *Fisher* v. *Southern Pacific R. R. Co.*, 89 Cal. 399; *People* v. *Westlake*, 62 Cal. 303; *Kennedy* v. *People*, 39 N. Y. 245; *Cooper* v. *State*, 23 Tex. 331.) This evidence being incompetent must be presumed prejudicial. (*People* v. *Smith*, 93 Cal. 445.) The court erred in admitting in evidence the alleged dying declaration of the deceased, as no sufficient predicate had been laid for its introduction. (1 Greenleaf on Evidence, 156, 158; *People* v. *Hodgdon*, 55 Cal. 72; 36 Am. Rep. 30; *People* v. *Sanchez*, 24 Cal. 17; *Rex* v. *Spilsbury*, 7 Car. & P. 187; *Rex* v. *Crockett*, 4 Car. & P. 544; *Rex* v. *Van Butchell*, 3 Car. & P. 631; Wharton's Criminal Evidence, 284, 285; *Reg.* v. *Osman*, 15 Cox C. C. 1; 6 Am. & Eng. Encycl. of Law, 122, note; *Reg.* v. *Jenkins*, 11 Cox C. C. 250.) The court erred in not allowing the witnesses Merritt and Wyatt to state what the witness Davis had told them in Coy's saloon, as it was admissible as showing inconsistent statements by such witness. (Code Civ. Proc., secs. 2049, 2052.) The court erred in giving of its own motion the instruction embodying section 1105 of the Penal Code. (*People* v. *Bushton*, 80 Cal. 160; *People* v. *Elliott*, 80 Cal. 296; *People* v. *Ah Gee Yung*, 86 Cal. 144.) The court erred in giving the instruction to the jury admonishing them as to their duties, as it plainly showed hostility to the defendant. (*People* v. *Travers*, 88 Cal. 233.) The jury had a right to consider the fact that the defendant had been tried several

times, and it was error for the court to instruct them upon the matter. (*People* v. *Travers*, 88 Cal. 233.)

*Attorney-General W. H. H. Hart,* and *Deputy Attorney-General William H. Layson,* for Respondent.

The admission of Dr. Wright's evidence was not error, as he was qualified as an expert. Physicians and surgeons are the proper ones to show effects of powder burns on the body. (*State* v. *Justus*, 11 Or. 178; *Sullivan* v. *Commonw.*, 93 Pa. St. 285; *State* v. *Cross*, 68 Iowa, 193; *Rash* v. *State*, 61 Ala. 89; *Moughon* v. *State*, 57 Ga. 102; *Boyd* v. *State*, 14 Lea, 161; *Eidt* v. *Cutter*, 127 Mass. 523; *Commonw.* v. *Piper*, 120 Mass. 188; 7 Am. & Eng. Encycl. of Law, p. 499, note; Lawson's Expert Evidence, p. 110.) Such testimony is peculiarly within the knowledge of surgeons. (*State.* v. *Knight*, 43 Me. 131.) Distances may be shown by experts. (*Innis* v. *Senator*, 4 Cal. 5.) There is no motion to strike out the testimony of the expert. (*People* v. *Mahoney*, 77 Cal. 533; *People* v. *Farmer*, 77 Cal. 7.) If defendant was not satisfied with the expert testimony, he should have contradicted it with other expert testimony. (*State* v. *Knight*, 43 Me. 134.) The dying declaration of the deceased was properly admitted as the proof that he was *in extremis* was sufficient. (*People* v. *Bemmerly*, 87 Cal. 117; *People* v. *Samario*, 84 Cal. 484; *People* v. *Farmer*, 77 Cal. 1; *People* v. *Ramirez*, 73 Cal. 404; *People* v. *Brady*, 72 Cal. 492; *People* v. *Lee*, 17 Cal. 76, 79.) The court properly gave the instruction objected to by the defendant, embodying a section of the Penal Code. (See Penal Code, sec. 1105.) The instruction admonishing the jury as to their duties was proper. (*People* v. *Cronin*, 34 Cal. 197; *State* v. *Knight*, 43 Me. 11–143.)

PATERSON, J.—The defendant was convicted of the crime of murder of the second degree, and was sentenced to serve a term of fifty years in the state prison.

The first point made by counsel for appellant is that the court below erred in allowing Dr. Wright, one of the witnesses on behalf of the prosecution, to testify as an expert with respect to the distance at which the pistol carried by the defendant at

the time of the homicide would produce powder marks on the
skin.   It is claimed that he was not shown to be an expert.
The doctor testified that he had been a physician and surgeon
for about seventeen years, and had had such experience as
would enable him to say at what distance powder marks would
be noticeable on the flesh from the firing of a pistol of 38 cali-
ber, Smith and Wesson; that he had seen a great many gun-
shot wounds, powder marks; and powder burns in connection
therewith, and knew of his own knowledge the distance between
the discharged weapons and the bodies fired upon.   Upon this
showing we cannot say that the court erred in allowing the wit-
ness to speak.   If the defendant desired to test the knowledge
of the witness and the correctness of his statement as to his
ability to give an opinion, he ought to have cross-examined him
before he was called upon to express such opinion.   We enter-
tain no doubt that the subject was a proper one for expert testi-
mony, and cannot be classed with such matters as were discussed
in *People* v. *Smith,* 93 Cal. 445.   In *People* v. *Lemperle,* 94 Cal.
45, the witness was not shown to be an expert.

It is claimed that the evidence was immaterial because the
evidence shows without conflict that at the time the deceased
received the wound he wore an undershirt, a white shirt, and a
coat and vest, while the statement of the witness "plainly pre-
supposes that the powder was not interrupted between the muz-
zle of the pistol and the abdomen of the deceased."   In this we
agree with counsel: it was certainly a waste of time to prove
at what distance the pistol with which the wound was made
would cause powder marks upon bare flesh, because the evidence,
as stated above, shows that between the pistol and the flesh of
the deceased, at the time the shot was fired, there were several
thicknesses of cloth.   But as stated by counsel in his brief, "it
is too plain a proposition to require argument, that any powder
escaping from the pistol would have lodged in the vest of the
deceased, and the skin over the abdomen would have been left
unmarked," and we are unable to see how the jury could have
been misled by the testimony.   The jury knew that no one
claimed there were powder marks upon the flesh of the deceased,
and all the evidence there is upon the subject tends to show that
there were no such marks upon the vest or shirts.

Appellant contends that the court erred in admitting in evidence the dying declaration of the deceased. It is said that no sufficient predicate had been laid for its introduction. Dr. Wright testified that he had a conversation with Wagner, the deceased, and informed him that the wound was fatal; that in speaking of the character of the wound the deceased used a variety of expressions. At one time he said, "I can't stand this." He said to the doctor, "Can I get well?" The doctor said, "No, Mr. Wagner, you can't; you cannot recover." Very shortly after that he said, "I can't stand this, it will kill me; I am going to die," and a number of expressions of that import. He said to his brother, just before the statement was made, "Julius, I think I am going to die." About a half an hour before the dying declaration was made he said to Dr. Smith, "Doctor, I know enough of anatomy to know I have received my death blow." The doctor said he hoped not. Wagner said, "Oh, I am badly hurt; I am shot in the bowels; I know it is all up." His statement was taken three or four words at a time, while he was gasping for breath. We think this testimony shows that the declaration was made under a sense of impending death, and there is nothing to show a revival or subsequent hope of recovery.

It is claimed that the court committed error in admitting in evidence the vest taken from Wagner's body after the same had lain in the grave for over five months; but Mr. Moore, the druggist, testified that he saw the vest at the graveyard when it was taken from the body, and it was then in the same condition as when he had examined it and brushed it just after the death of Wagner. The credibility of this witness, and the question whether the appearance of powder marks had been destroyed by lapse of time, and other circumstances, were matters for the jury to determine.

We do not think the court erred in allowing the witness Bradford to testify as to what the defendant said with reference to the shooting immediately after it occurred. The statement by the defendant that Wagner "did it himself," appears to have been entirely voluntary, and is consistent with the defense set up at the trial.

The court did not err in refusing to allow the witnesses

Merritt and Wyatt to state what Davis had told them in Coy's saloon. An attempt was made by the defendant to impeach his own witness, Davis, by evidence produced at the first trial, but, judging from the language of the court, the people and the defendant had stipulated to use only the testimony of Davis as taken at the last trial.

The court read to the jury section 1105 of the Penal Code, and it is claimed that in doing so the court erred. *People* v. *Bushton*, 80 Cal. 160, is the basis of this contention. We do not think the contention is sound, because coupled with this instruction were others which fully and clearly insisted upon the right of the defendant to have in every step of the case all reasonable doubts as to his guilt, or as to any fact essential to show guilt, resolved in his favor.

We do not find any error in the instruction of the court admonishing the jury as to their duties. It simply called their attention to the importance to the public of having the laws properly executed, and the importance as well to the defendant of a careful and a dispassionate consideration of the evidence and the law, so that they might reach a result which would be "just to both sides, regardless of what may be the consequences." We see nothing in any portion of the charge which indicates hostility on the part of the court towards the defendant.

It was shown in the course of the trial that the case had been previously tried three times, the jury having disagreed in each instance. The court instructed the jury as follows: —

"Something has been said about the number of trials there has been in this case. You must in no sense consider that fact. You are sworn to try this case, and a true verdict render according to the evidence you have heard in the case, and you will consider no other matters in your deliberations except the evidence and the instructions of the court. There is no limit to the number of times a case may be tried. When trials do not result in a verdict a case may be tried until a verdict is obtained." It is said that the jury had as much right to consider the fact that the case had been tried several times without a verdict as any other fact in evidence before them. We cannot assent to this proposition. It did not concern the jury in determining the guilt or innocence of the defendant what other

juries had thought of the evidence before them. The jury engaged in trying a case have no more right to receive or consider the opinions of other juries than they have the opinions of any other persons, and, besides this, the disagreement of former juries may not have been due to a difference of opinion as to the guilt or innocence of the defendant, but to a difference of opinion as to the degree of the crime which he has committed.

The court did not err in refusing to give instructions set forth in the brief. The right of the defendant as a reasonable man, under the circumstances, to act upon appearances was fairly presented to the jury. The instruction asked with respect to the suppression of evidence was entirely unwarranted by the testimony in the case. It was not claimed by any one that the bullet pierced the coat of the deceased. The fifteenth instruction refused was not warranted by the evidence, and was objectionable because it singled out and gave prominence to certain portions of the evidence.

The charge as a whole is full and fair.

·Other points are made which in our opinion do not require special consideration.

Judgment and order affirmed.

HARRISON, J., and GAROUTTE, J., concurred.