## PEOPLE v. BUTTON.[*]

### No. 21,127; November 2, 1894.

#### 38 Pac. 200.

**Homicide — Self-defense—Withdrawal from Combat.**—Penal Code, section 197, provides that to constitute justifiable homicide, if defendant was the assailant in a mortal combat, he must in good faith have endeavored to decline any further struggle before the homicide was committed. Held, that where one accused of murder commenced the combat, but in good faith tried to withdraw before the homicide, and was followed by deceased, who continued the combat, the fact that deceased, by reason of injuries sustained at defendant's hands, was unable to realize that defendant sought to withdraw, does not

---

[*] For subsequent opinion in bank, see 106 Cal. 628, 46 Am. St. Rep. 259, 28 L. R. A. 591, 39 Pac. 1073.

limit the right of defendant to claim that the killing was done in self-defense.

**Homicide—Self-defense—Withdrawal from Combat.—**If it was defendant's purpose in good faith to withdraw from the combat, and he endeavored to do so, it is not necessary to his justification that the conflict should have actually ceased, or that there should have been such an interval as would divide it into two different combats.

APPEAL from Superior Court, San Bernardino County; George E. Otis, Judge.

Charles Button was convicted of manslaughter, and appeals. Reversed.

Byron Waters and Wm. A. Harris for appellant; W. H. H. Hart and Frank F. Oster for the people.

HAYNES, C.—An information was filed against Button, charging him with the murder of Gustav Bohm, and upon the trial he was found guilty of manslaughter. His motion for a new trial was denied, and this appeal is from the judgment and the order denying a new trial.

Some exceptions were reserved to evidence, but the principal questions arise upon the instructions to the jury and the sufficiency of the evidence as matter of law to sustain the verdict. The deceased died from a gunshot wound inflicted by the defendant. Very shortly before the shooting angry words had passed between the parties, and at that time the defendant stamped or kicked the deceased in the face. The injury inflicted by defendant upon Bohm's face when he stamped upon it was fully described by the physicians, and doubtless was of a very serious character, breaking down the left cheek-bone and injuring the left eye, so that, in the opinion of the physician, the possibility of sight in that eye was excluded, and that the tendency would be to affect the other eye, both in co-ordination of movement and vision. The doctor was then asked by the district attorney: "What faculties would it affect, in your opinion?" Defendant's objection that it was incompetent, irrelevant and immaterial was overruled, and the witness answered: "It would affect more particularly his brain, and his mental faculties, and his vision, and sense of smell, and the guidance and direction of his eyes

or eye to a particular spot, or for any particular purpose."
The same witness was asked the further question: "Would
that, in your opinion, affect a man's impressions of things
around him?" An objection to this question was also over-
ruled, and the witness answered, "Yes, sir." Other ques-
tions were permitted, and answers received, of like character.
In this connection one of the instructions given to the jury
may properly be considered, inasmuch as it is based on this
evidence of the mental· condition of Bohm. The defendant
requested the court to give the following instruction: "One
who has sought a combat for the purpose of taking advantage
of another may afterward endeavor to decline any further
struggle, and if he really and in good faith does so before
killing the person with whom he sought the combat for such
purpose, he may justify the killing on the same grounds as
he might if he had not originally sought such combat for such
purpose." The court modified said instruction, and gave it
as modified by the addition of the following: "Provided, that
you also believe that his endeavor was of such a character,
and so indicated, as to have reasonably assured a reasonable
man that he was endeavoring in good faith to decline further
combat, unless you further believe that in the same combat in
which the fatal shot was fired, and prior to the defendant en-
deavoring to cease further attack or quarrel, the deceased
received at the hands of the defendant such injuries as de-
prived him of his reason or his capacity to receive impressions
regarding defendant's design and endeavor to cease further
combat." The court also gave the following instructions:
"But, even though the jury should be satisfied that the de-
fendant, after such assault, and before firing the fatal shot,
did really and in good faith endeavor to decline any further
struggle, and to abandon the conflict, and that the defendant,
at the time he fired the fatal shot, had reason to fear and did
fear that the deceased meant to take his life, and acted under
the influence of such fears alone, yet if you also believe that
in such assault the defendant, by his own act, had put the de-
ceased into such a condition that the defendant could not make
the deceased understand that the defendant desired to with-
draw from the conflict, you must not acquit the defendant."
The modification of the first of these instructions and the
qualification in the second commencing with the word "yet"

were erroneous. If, under the circumstances existing at the moment of the homicide, the deceased had killed the defendant, and he had been on trial for murder, there might have been some pertinency to these instructions. If the defendant, being the first aggressor, had declined further combat, as stated in the first part of the instruction, he is placed, so far as the law of self-defense is concerned, in the same position as though there had been no prior combat; and, that being true, the mental or other condition of the deceased could not affect his right of self-defense, even though such condition, if the deceased had slain the defendant, would have excused the homicide. If a confirmed lunatic, so completely bereft of reason as to make him wholly irresponsible for his acts, is about to take my life, may I not, when it is necessary for the preservation of my own life, take his? Must I be placed where I have no alternative but to accept death at his hands, or be hanged for murder? Section 197 of the Penal Code defines justifiable homicide. So much of subdivision 3 of that section as is pertinent is as follows: "But such person or the person in whose behalf the defense was made, if he was the assailant or engaged in mortal combat, must really and in good faith have endeavored to decline any further struggle before the homicide was committed." This section makes the justification to depend wholly upon the endeavor of the defendant in good faith to decline any further struggle, and not upon the mental or other condition of the deceased; nor, if such condition was not normal, upon whether it was caused by the defendant. It follows from these considerations that the evidence of the physician as to the effect of the injury upon the mental or other condition of the deceased was improperly admitted.

Another instruction requested by the defendant was modified by the court, and, given as modified, is as follows (the modification being in italics): "If you believe from the testimony in this case that the defendant committed an assault upon the deceased by kicking him, and then left him with the intention of doing him no further harm; that after committing such assault he went after his horse, and saddled him, with the purpose of leaving the party, to avoid further trouble, and that other members of the party endeavored to persuade him to remain, and that while he and they were so engaged the

deceased picked up his own gun, pointed and snapped it at defendant, and then pumped or attempted to pump a cartridge into it, and that he again pointed it at defendant, and that then defendant fired the fatal shot; *and you further believe that the first assault and the second were substantially distinct transactions*—you must acquit the defendant, whether you think the assault by kicking was justifiable or not.'' In another instruction upon the same subject the following qualification was inserted: ''And that after the first assault had ceased, and there had an interval elapsed between said first assault and the final assault, making said assaults respectively, although in some degree related to each other, yet substantially distinct transactions, each attended with its own separate circumstances, and the deceased procured his gun, and made such an attempt to shoot the defendant,'' etc., stating circumstances which would justify the homicide. Each of these modifications imposes upon the defendant conditions not required by the statute. They required the jury to find as matter of fact, in order to justify the homicide, that there were two substantially distinct transactions; that is, that the transaction immediately connected with the shooting of the deceased, though if considered by itself it would have justified the defendant, could not justify him unless it was substantially distinct from the assault made by defendant before he went for his horse. The interval between the two occurrences is not important simply as it may serve to mark two occurrences or transactions instead of one, but also because what occurred in the interval, as well as the interval itself, when shown to be voluntary, marks a withdrawal from the conflict, and furnishes evidence tending to show the purpose and intent of the defendant not to renew it. If there was such purpose and intent on the part of defendant in good faith to withdraw from the conflict, and in like good faith he endeavored to do so, it is not necessary to his justification that the conflict should have actually ceased, or that there should be an interval sufficient to divide it into two substantially distinct transactions. It was impossible for the jury to acquit under these instructions, unless they concluded that there were two transactions instead of one.

In People v. Gonzales, 71 Cal. 577, 12 Pac. 783, it is said: ''The tenth instruction does not enunciate a correct proposition of law where it declares that one 'cannot in any case

justify killing another by a pretense of necessity, unless he was wholly without fault in bringing that necessity on himself'; for cases may, and frequently do, occur in which the aggressor, although primarily in fault, has really and in good faith sought to avoid further conflict before the mortal blow was given, and when this is apparent, and he slay his antagonist in the necessary defense of his own life, he is not guilty of any crime'': See, also, People v. Bush, 65 Cal. 129, 3 Pac. 590; People v. Robertson, 67 Cal. 649, 8 Pac. 600; People v. Simons, 60 Cal. 72.

In the seventh instruction given at the request of the prosecution it was said: ''That, in order to determine whether any such attempted withdrawal was in good faith, the jury are to take into consideration all the surrounding circumstances, the situation and relation of the parties; and the conduct of the party intending to thus withdraw must be unequivocal, and so marked in the matter of time, place and circumstance as to clearly evince the withdrawal of the accused from the combat.'' It is argued by appellant that, the evidence on the part of the prosecution having tended to show that the homicide was justifiable, the burden of proof was not upon the defendant to prove his justification, and cites Penal Code, section 1105. The court did not refer in this instruction to the question as to where the burden of proof rested. An instruction substantially in the language of that section had before been given without comment. This instruction said: ''The conduct of the party must be unequivocal and clearly evince the withdrawal.'' The first part of the instruction is unobjectionable, but it may be questioned whether the latter part does not conflict with People v. Bushton, 80 Cal. 160, 22 Pac. 127, 549, and other cases following that, down to People v. Hawes, 98 Cal. 653, 33 Pac. 791. People v. Bushton, supra, overruled People v. Ah Duck, 61 Cal. 395, and People v. Raten, 63 Cal. 422, which held that the burden was upon the defendant to show by a preponderance of evidence circumstances of mitigation or justification. In People v. Bushton, supra, it was said of section 1105, Penal Code: ''This does not mean that he must prove such circumstances by a preponderance of evidence, but that the presumption that the killing was felonious arises from the mere proof by the prosecution of the homicide, and the burden of proving circumstances of mitigation, etc.,

is thereby cast upon him. He is only bound, under this rule, to produce such evidence as will create in the minds of the jury a reasonable doubt of his guilt of the offense charged. . . . . The well-settled rule that a .defendant shall not be convicted unless the evidence proves his guilt beyond a reasonable doubt applies to the whole and every material part of the case, no matter whether it is as to the act of killing or the reason for or manner of its commission. . . . . The jury should have been instructed that the burden of proving circumstances of miti- gation, or that justified or excused the killing, devolved upon the defendant, but that if, upon the whole case, they enter- tained a reasonable doubt from the evidence as to his guilt, he should be acquitted. Any other rule as to the weight of the evidence makes one measure applicable to one part of the case and a different one to another part, and leads to con- fusion'': See, also, People v. Elliott, 80 Cal. 305, 22 Pac. 207; People v. Lanagan, 81 Cal. 143, 22 Pac. 482; People v. Carroll, 92 Cal. 572, 28 Pac. 600; People v. Hawes, 98 Cal. 653, 33 Pac. 791.

Appellant's contention that a new trial should have been granted because of the insufficiency of the evidence, and that the judgment should be reversed, with a direction to the court below to discharge the defendant, need not be considered. There is no doubt of the power of the appellate court to de- cide, as matter of law, that a given state of facts does not show that an offense has been committed; but it is a power that should be cautiously exercised, inasmuch as even in an ap- parently clear case this court cannot know but that upon an- other trial additional evidence tending to show guilt may be obtained. Except in rare cases, the question whether the defendant should be discharged is properly left to the trial court, unprejudiced by any expression of opinion by this court. For the other reasons hereinbefore stated the judg- ment and order appealed from should be reversed and a new trial granted.

We concur: Searls, C.; Vanclief, C.

PER CURIAM.—For the reasons given in the foregoing. opinion the judgment and order appealed from are reversed and a new trial granted.