[Crim. No. 262. First Appellate District—December 13, 1910.]

THE PEOPLE, Respondent, v. GEE GONG, Appellant.

CRIMINAL LAW—MOTION TO SET ASIDE INDICTMENT—STATEMENT OF NAMES OF WITNESSES—PURPOSE OF LAW—SWORN INTERPRETER NOT WITHIN STATUTE.—The purpose of section 995 of Penal Code, providing that the indictment must be set aside "when the names of the witnesses examined before the grand jury or whose depositions have been read before them are not inserted at the foot of the indictment or indorsed thereon," is to furnish the people and the defendant with the names of the witnesses upon whose testimony the indictment is based. One sworn as an interpreter before the grand jury merely aids in getting the testimony in such language that the grand jury can understand it, and while he is in one sense a witness, he is not "a witness examined before the grand jury," within the meaning of the statute, and a motion to set aside the indictment, because the name of the interpreter does not appear thereon, was properly denied.

ID.—MURDER—REFUSAL TO GIVE REQUESTED INSTRUCTIONS—ERROR NOT SHOWN—CERTIFIED CHARGE—WAIVER.—Upon a conviction for murder, alleged error in the refusal of the court to give instructions requested by the defendant cannot be considered upon appeal, where

there is no indorsement on any of them showing whether they were given or refused and there is no certificate or bill of exceptions tending to show that fact; but it appears, on the contrary, in the reporter's transcript that the charge given by the court is certified, and it shows that both parties waived written instructions.

ID.—READING CODE SECTION—BURDEN OF PROVING MITIGATING CIRCUMSTANCES OR EXCUSE—CRITICISM—INSTRUCTIONS AS TO REASONABLE DOUBT.—While the reading of section 1105 of the Penal Code to the jury, as to the burden upon defendant of proving circumstances in mitigation or excuse or justification of the homicide, when the homicide has been proved or admitted, has been criticised, yet any possible error therein is cured, where the court has elsewhere fully instructed the jury as to the right of defendant to the benefit of every reasonable doubt, and to have every fact proved beyond a reasonable doubt.

ID.—GENERAL RULE AS TO READING CODE PROVISION WHICH MAY MISLEAD—OVERCOMING EFFECT OF INSTRUCTIONS.—As a general rule, where the reading of a code section might of itself mislead the jury, if the court elsewhere fully and sufficiently instructs the jury so that it appears that they could not, as reasonable men, have been misled thereby, the reading thereof is not error.

ID.—INSTRUCTION AS TO EVIDENCE OF FLIGHT—"INDICATIVE OF GUILTY MIND"—ERROR—QUESTION OF FACT.—Under an instruction that "evidence of flight is received not as part of the things done in connection with the criminal act, but as indicative of a guilty mind; and if you believe from the evidence that a crime was committed in manner and form as charged in the indictment, and that immediately after its commission Gee Gong took flight, it is a circumstance to be weighed by you as tending to prove a consciousness of guilt. It is not sufficient of itself to establish the guilt of the defendant, but the weight to which it is entitled is matter for you to determine in connection with all the other facts and circumstances in the case as presented," it is held that the preliminary part of the instruction, so far as stating that such evidence should be received "as indicative of a guilty mind," is erroneous, as a charge upon a question of fact. [Criticism disapproved by supreme court in bank.]

ID.—EVIDENCE—OWNERSHIP OF COAT AND APRON FOUND NEAR DECEASED LAUNDRYMAN — CONTRADICTION OF PROSECUTION — PREJUDICIAL ERROR.—Where the prosecution introduced evidence that deceased worked in a laundry and had been instructed to deliver a white coat and apron marked "Wee" to a customer of that name, which parcel was found in the street near his body, and defendant claimed self-defense and testified that the parcel was his, that it had been given to him by his uncle "Wee," that he had it with him that morning seeking a position as a cook without success, and while returning with the package in his hand the trouble arose, and deceased met

his death, it was prejudicially erroneous to refuse to allow defendant to testify that his uncle had given him other similar coats and aprons of the same texture and marks, as bearing upon the ownership of the package found.

ID.—DISCRETION TO BE EXERCISED IN FAVOR OF JUSTICE TO DEFENDANT. In regard to all questions addressed to the discretion of the court, it should be exercised in the interests of justice to the defendant, as to any matter which could throw light upon any material circumstance testified to by him, in his own behalf, and the benefit of the *doubt should be given to the defendant* in the admission of evidence in his favor.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank H. Dunne, Judge.

The facts are stated in the opinion of the court.

James Hanley, and J. E. Alexander, for Appellant.

U. S. Webb, Attorney General, and J. Charles Jones, for Respondent.

COOPER, P. J.—The defendant was charged by the indictment with the crime of murder, for which crime he was tried, and found guilty of murder in the second degree. He prosecutes this appeal from the judgment and the order denying his motion for a new trial.

We have carefully examined the evidence, and find it sufficient to sustain the verdict.

A motion was made to set aside the indictment upon the ground that the name of David Jones, who was sworn to act as an interpreter, was not appended at the foot of the indictment. The Penal Code (sec. 995) provides that an indictment must be set aside "when the names of the witnesses examined before the grand jury, or whose depositions have been read before them, are not inserted at the foot of the indictment or indorsed thereon."

It is not claimed that Jones was a witness who was examined before the grand jury as to any fact, or that his testimony was taken before the grand jury. It is true that he was sworn to act as an interpreter; but this was in the nature of an officer or specialist selected and appointed to translate the questions from English into Chinese and the answers from

Chinese into English; but the words "witnesses examined before the grand jury" show that a person sworn as an interpreter is not a witness in the sense in which the word is used in the statute. The purpose of the law is to furnish the people and the defendant with the names of the witnesses upon whose testimony the indictment is based. (*People* v. *Northey,* 77 Cal. 629, [19 Pac. 865, 20 Pac. 129]; *People* v. *Quinn,* 127 Cal. 542, [59 Pac. 987].) The indictment is based upon the testimony of the witnesses examined before the grand jury, and the interpreter merely aids in getting the testimony in such language that the grand jury can understand it. Such interpreter may be present in the jury-room, and in fact the grand jury have a right to require the attendance of an interpreter (Pen. Code, sec. 925); and while he is in one sense a witness, he is not a "witness examined before the grand jury."

Appellant complains of the alleged refusal of the court to give his offered instructions numbered 13, 20, 25 and 35. Respondent contends that there is nothing in the record to show that the instructions were either given or refused, and we must so hold. The transcript contains forty separate typewritten instructions under the head "Defendant's proposed instructions"; but there is no indorsement on any of them showing whether the instruction was given or refused, and there is nothing in the way of a certificate or bill of exceptions in any way showing or tending to show such fact. In the reporter's transcript the charge given by the court is certified, and it shows that both parties waived written instructions. We therefore cannot consider the question of the instructions which defendant claims he offered, and which he claims were also refused.

It is claimed that the court erred in giving the following instructions to the jury: "Upon a trial for murder, the commission of the homicide by the defendant being admitted or proved, the burden of proving circumstances of mitigation, or which justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed amounts to manslaughter, or that the defendant was justifiable or excusable."

This instruction is literally a copy of section 1105 of the Penal Code, and evidently was read to the jury from the

section, or copied in the instructions given by the court. It is claimed that giving the section of the Penal Code was error, for the reason that by it the jury were led to understand that the burden of proof was cast upon the defendant to show self-defense. While the reading of the section of the code has been criticised, it has been held that if the court elsewhere fully instructed the jury as to the right of the defendant to the benefit of every reasonable doubt, and to have every fact proven beyond a reasonable doubt, the error in giving the instruction is cured. In other words, where the reading of a section of itself might mislead the jury, if the court elsewhere fully and sufficiently instructs the jury so that it appears that they could not as reasonable men have been misled by the instruction, the instruction will be held not to constitute error. (*People* v. *Ruef,* 14 Cal. App. 576; *People* v. *Anderson,* 105 Cal. 32, [38 Pac. 513]; *People* v. *Hawes,* 98 Cal. 649, [33 Pac. 791].)

The court instructed the jury: "Evidence of flight is received, not as a part of the things done in connection with the criminal act itself, but as indicative of a guilty mind; and if you believe from the evidence in this case that a crime was committed in manner and form as charged in the indictment, and that immediately after its commission the defendant Gee Gong took flight, it is a circumstance to be weighed by you as tending in some degree to prove a consciousness of guilt. It is not sufficient of itself to establish the guilt of the defendant, but the weight to which that circumstance is entitled is a matter for you to determine in connection with all the other facts and circumstances called out in the case as presented."

The part of the instruction given by the court, "Evidence of flight is received, not as a part of the things done in connection with the criminal act itself, but as indicative of a guilty mind," was error. It was equivalent to telling the jury that flight indicates a guilty mind, which is by no means true. It may indicate a guilty mind, but that is for the jury to find or infer from all the facts and circumstances in connection with the flight. Flight is not of itself evidence of guilt, nor does it raise a presumption of guilt. It is at most only a fact to be considered by the jury in connection with all the other facts and circumstances in the case from

which it may draw an inference as to the guilt of the defendant. It has sometimes been said that it is a circumstance tending in some degree to prove a consciousness of guilt; but that is quite different from telling the jury that such evidence is received "as indicative of a guilty mind." There are many cases where the circumstances show that the flight is perfectly consistent with innocence, but it is always received upon the theory that the jury will give it such weight as it deserves, depending upon the particular circumstances of each case. (*Ryan* v. *People,* 79 N. Y. 593; *Alberti* v. *United States,* 162 U. S. 499, [16 Sup. Ct. Rep. 864, 40 L. Ed. 1051].) It is a circumstance to be considered by the jury, who might regard it as sufficient to show a consciousness of guilt. (*People* v. *Ashmead,* 118 Cal. 509, [50 Pac. 681].) The question of fact as to whether or not the defendant fled is for the jury. (*People* v. *Choy Ah Sing,* 84 Cal. 276, [24 Pac. 379].) It has been held error for the court to instruct the jury that flight raises a presumption of guilt. (*People* v. *Wong Ah Ngow,* 54 Cal. 153, [35 Am. Rep. 69].)

We see no reason why the court should have instructed the jury that evidence of flight is received as indicative of a guilty mind. It was clearly a charge upon a question of fact.

It was claimed by the prosecution that the deceased was a laundryman, and that at the time of the homicide he was carrying for delivery a small parcel containing, among other things, a white coat and apron, which parcel was found on the street near where the body lay. The prosecution was allowed to introduce evidence, under defendant's objection, that the deceased was given the small parcel of laundry to be given to a customer of the laundry where deceased was employed. The witness Yee Quan Woo, after repeated objections by defendant's counsel, was allowed to testify that he instructed the deceased to take the parcel of laundry marked "Wee" to the owner. The articles were shown to the witness, and he identified them as being the coat and apron that he had given to the deceased to be delivered to a customer of the laundry on the day of the homicide. The defendant testified in his own behalf that the parcel containing the coat and apron was his property, and that he had taken them with him upon the morning of the homicide on an unsuccessful mission to seek employment as a cook, and

was returning peaceably with them in his possession when the trouble arose and the deceased met his death. In other words, while the prosecution had been allowed to prove the possession of the parcel by deceased for the purpose of showing that he was on a peaceful mission, doing his usual work, when he was unlawfully attacked and shot to death, the defendant desired, in aid of his contention that he did act in self-defense, to prove that he had been on a peaceful mission in search of work, with the parcel containing his coat and apron, and that the meeting with deceased was not premeditated, but that it occurred while defendant was returning from a peaceful mission. The defendant testified that he was returning with the coat and apron; that they were his property given to him by his uncle "Gee Wee" while he was working with his uncle at the Berkshire hotel on Sutter and Jones streets, in San Francisco, and that the coat and apron were marked "Wee." He was then asked, "Did your uncle give you any other aprons at or near the time he gave you this apron?" To this question the prosecution objected on the ground it was irrelevant, immaterial and incompetent, and self-serving. The attorney for the defendant stated to the court that he claimed the right to show the ownership of these aprons, and further said: "We wish to show that at the time this apron was received, not alone this apron but other aprons were received, and not alone marked in the way this is, but similar marks on the other aprons of the same texture and upon the same cloth; and we wish to show the other aprons as it was shown here by the prosecution that certain things marked 'Wee' went certain ways. We wish to show the 'Wee' mark here was the uncle's mark, and we will show those aprons which he received at the same time, and show that this is the property, and also show how he obtained possession of it." After some further discussion and objection by the prosecution the court remarked: "It seems to me that the whole matter is collateral anyhow, and can't throw any light upon the occurrence itself." Finally the attorney for the defendant again asked a question as follows: "On the fourteenth day of November, 1909, did you have belonging to you any aprons similar to these aprons and marked 'Wee' the same as this apron which has been given to you by your uncle?" This question was objected to,.

and the court remarked: "That is the same question. I will sustain the objection to that."

The court erred in refusing to allow the offered evidence. It was a material question upon the investigation being held before the jury as to whether or not the defendant had told the truth as to the ownership of the articles. He had stated the name of his uncle, and the place where his uncle gave him the coat and apron, and the mark "Wee" being the name of his uncle. He desired, and his counsel so stated, to prove that other coats and other aprons of the same texture and similar marks were given to him at the same time, so as to show that the coat and apron in the package were a part of the articles given to him by his uncle. Upon the plainest principles of justice the evidence should have been allowed. Defendant was being tried for a crime that involved his liberty and perhaps his life. In regard to all questions addressed to the discretion of the court which would tend to throw light upon any material circumstance, the discretion of the court should have been exercised in favor of the admission of the testimony. If such testimony would logically tend to show justification or mitigation of the alleged crime, the court should have admitted it. Whether the defendant could have proven the matters which he offered to prove or not is not for us to say, but he should have been given the opportunity. Suppose he could have shown that his uncle had ordered a half-dozen coats and a half-dozen aprons made from a peculiar cloth, with the date of making and the maker's name on each garment, and further that each garment had a particular mark "Wee" placed upon it, and then presented such garments to the defendant; and suppose the defendant brought into court the particular five coats and aprons of similar texture and marks; would not such testimony tend—and strongly tend—to show the fact that the coat and apron in this package were his property? What reason was there for excluding the offered evidence? It certainly could not have taken very much time, and it bore directly on the question of the ownership of the package.

In *Moody* v. *Peirano,* 4 Cal. App. 411, [88 Pac. 380], where the question was as to whether or not the defendant had warranted certain seed wheat as "White Australian," it was held that evidence of similar warranties made by defend-

ant to other purchasers about the same time was admissible. The court held that the offered evidence tended to illustrate and throw light on the transaction in controversy. If such be the correct rule in a civil case, how much more important in a criminal case where the liberty or life of the prisoner is involved. The evidence was just as material as though the question were the ownership of a pair of shoes, and the defendant had offered to prove that the shoes were a pair from several pairs that had been ordered and made of special leather and of a special design. In fact there could have been no object in excluding the offered evidence except to keep from the jury the full facts in connection with the matter. As we have said before in many cases, the ends of justice would be better subserved, and convictions would be obtained in as many cases, if district attorneys and trial judges in case of a doubt as to the relevancy of testimony offered on behalf of defendant should admit it, giving the benefit of the doubt to the defendant. Not only would as many convictions be secured but a far greater number of cases would be affirmed in this court, and the court would not be compelled to hold that prejudicial error was committed in the exclusion of such testimony.

The judgment and order for these reasons must be reversed, and it is so ordered.

Hall, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 11, 1911, and the following opinion rendered thereon:

THE COURT.—The petition for rehearing is denied. We deem it proper to say, however, that we do not approve of the criticism by the district court of appeal of the instruction referred to in its opinion.