79 South. 504)

SANDERS v. STATE. (7 Div. 514.)

(Court of Appeals of Alabama. June 25, 1918.)

1. HOMICIDE ☞125—MURDER—KILLING PURSUANT TO UNLAWFUL ACT.

Where defendant, acting as captain of a band of men and carrying a gun, went to deceased's house to whip him, and fatally wounded him in presenting the gun at him, whether the death was accidental or not, the killing was murder; defendant's act and purpose having been unlawful.

2. CRIMINAL LAW ☞363 — EVIDENCE — RES GESTÆ.

In prosecution for murder by shooting deceased, when defendant, desiring to whip him, went to his house with a gun, fact deceased was in bed with wife and baby when killed was of res gestæ, having tendency to show act dangerous to lives of others, etc.

**3. CRIMINAL LAW ⬡⟹814(1) — INSTRUCTION — REFERENCE TO COUNTS.**

Where there was only one count in an indictment for murder, charge that if jury believed killing was not malicious, verdict should be for defendant on first and second counts, was properly refused.

**4. CRIMINAL LAW ⬡⟹796—INSTRUCTION—ARGUMENTATIVE CHARACTER.**

Requested charge that law fixes punishment for different degrees of homicide, jury having nothing to do with it, and that, if they believed defendant was guilty of manslaughter in second degree, they should find so, regardless of punishment, was bad as argumentative.

**5. HOMICIDE ⬡⟹304—INSTRUCTIONS.**

In prosecution for murder, portion of oral charge using terms "unlawfully or otherwise" as to killing, was not erroneous, though charge of court used terms "accidentally or otherwise."

Appeal from Circuit Court, De Kalb County; W. W. Haralson, Judge.

Charles Sanders, alias, etc., was convicted of murder in the second degree, and he appeals. Affirmed.

The following are the charges refused to defendant:

(1) If you have a reasonable doubt of defendant's guilt growing out of any part of the testimony, it would be your sworn duty under the law to give defendant the benefit of such doubt, and if after considering all the evidence in the case you have a reasonable doubt that the killing was perpetrated by malice with formed' design to take human life, then you could not convict defendant for murder in the first degree. And if you further find from the testimony that the killing was not a malicious killing, and was not done under circumstances that amounted to manslaughter in the first degree, but that the killing was an unintentional killing done while engaged in an unlawful act, such as pointing a gun at deceased, then defendant would not be guilty of any higher offense than manslaughter in the second degree.

(2) If you believe from the evidence in this case that the killing was an accidental killing, not perpetrated by malice, and without any intention of taking human life, and that defendant carelessly or negligently pointed a gun at deceased, and it accidentally discharged and killed deceased, defendant would not be guilty but only of manslaughter in the second degree. Under such circumstances as this, defendant would not be guilty of murder in either degree, or manslaughter in the first degree.

(3) In the absence of malice, there can be no murder, and I charge you, gentlemen of the jury, that if you believe from the evidence that the killing was not malicious, then your verdict should be for defendant on the first and second counts of the indictment.

(4) Manslaughter in the second degree is the unintentional killing of a human being done while engaged in an unlawful act. It is an unlawful act to point a gun loaded or unloaded at another, and if, for any reason, a person unintentionally kills, he would be guilty of manslaughter in the second degree.

(5) If you believe from the evidence that defendant did not intend to kill deceased, but did intend to cause him to come out of the house, where the boys, together with himself, were going to give deceased a hickory whipping, and without intending to shoot deceased, the gun accidentally discharged and killed deceased, then defendant is guilty of manslaughter in the second degree, and of no higher offense, and you should so find.

(6) If you believe the evidence in this case, you should find defendant guilty of manslaughter in the second degree.

(7) Manslaughter in the second degree is the unintentional killing of a human being done while engaged in an unlawful act not in itself amounting to a felony, and I charge you that it is not a felony to go into the house of another for the purpose of taking him out and whipping him, and if you believe from the evidence in this case that the killing was unintentional, then you should find defendant guilty of manslaughter in the second degree.

(8) I charge you that the law fixes the punishment for the different degrees of criminal homicide, and you have nothing to do with this, except within the limits fixed by the statute, and if you believe from the evidence and the law as given you by the court that defendant is guilty of manslaughter in the second degree, then you should so find, regardless of the punishment.

Isbell & Scott, of Ft. Payne, for appellant. F. Loyd Tate, Atty. Gen., and Emmett S. Thigpen, Asst. Atty. Gen., for the State.

BROWN, P. J. [1] The appellant was jointly indicted with five other named persons for the murder of Chris Edmonds, by shooting him with a gun. The indictment charged murder in the first degree, and on the trial of the defendant he was convicted of murder in the second degree. The evidence is without conflict that the defendant and those jointly indicted with him entered into a conspiracy to go to the house of deceased, take him out, and whip him with hickory withes, and on the night fixed the conspirators met, prepared masks to be worn so as to hide their identity, provided two shotguns which they carried with them, elected one of their number, the defendant, as captain or spokesman to do the talking, and arranged that he should carry one of the guns, and designated another one of their number, Will Matthews, to carry the other gun and to guard the back door of the house so as to prevent the deceased from escaping through the back door, or members of his family from making an outcry. A number of hickory withes were also prepared and carried along. There was evidence showing that the defendant was sickly, weak, and nervous, and that the gun he carried was very "quick on trigger," and could be discharged by a very slight shock or jar, without touching the trigger. Thus armed and equipped, the defendant and his coconspirators proceeded to the home of the deceased, and, going upon the front porch, the defendant called to him to come out, and, failing to get any response, the defendant entered the door and went into the house, and some one of the others present lighted a torch. Thereupon the deceased, who was in bed with his wife and young child, raised up in bed, and defendant, presenting this quick-triggered gun at the deceased, called upon him to throw up his hands, and thereupon the gun fired, inflicting a wound causing deceased's instant death.

The defendant testified in his own behalf

that he did not pull the trigger, but that the gun was accidently discharged, and offered some evidence tending to show that the conspirators did not contemplate taking the life of the deceased, but merely intended to take him out by force, if necessary, and whip him. Taking this phase of the evidence as a predicate, the defendant insists that he was entitled to have the jury instructed that, if they believed from the evidence that the gun was discharged without design, and the deceased's death was unintentionally caused, he could not be convicted of a higher degree of homicide than manslaughter in the second degree. This contention ignores the nature of the enterprise the defendant and his co-conspirators were engaged in, and that directly resulted in the death of the deceased. There is no room for contention here that the deceased's death was an accidental death, because the act causing the death was unlawful. 2 Bish. Cr. Law, § 696; Lewis v. State, 96 Ala. 10, 11 South. 259, 38 Am. St. Rep. 75; Walker v. State, 85 Ala. 7, 4 South. 686, 7 Am. St. Rep. 17; Johnson v. State, 94 Ala. 41, 10 South. 667.

An actual intent to kill is not an essential element of either murder in the second degree or manslaughter in the first degree. "A voluntary setting in motion or application of unlawful force or the doing of an act greatly dangerous to the lives of others whereby death ensues will suffice to supply the legal element of evil intent, however free the action may be from actual purpose to kill." Lewis v. State, supra; Clarke v. State, 117 Ala. 1, 23 South. 671, 67 Am. St. Rep. 157; White v. State, 84 Ala. 421, 4 South. 598; Harrington v. State, 83 Ala. 9, 3 South. 425; Williams v. State, 83 Ala. 16, 3 South. 616; Jones v. State, 13 Ala. App. 10, 68 South. 690; Reynolds v. State, 154 Ala. 14, 45 South. 894.

It is murder where death results from an assault or other unlawful act intentionally done in such a manner as will likely cause death or serious bodily harm, even though there may have been no actual intent to cause death. Evans v. State, 109 Ala. 11, 19 South. 535; Williams v. State, 81 Ala. 1, 1 South. 179, 60 Am. Rep. 133; Hadley v. State, 55 Ala. 31; Clarke v. State, supra; 21 Cyc. 712, 713, § 6.

What was said in the Williams Case, 81 Ala. 7, 1 South. 179, last cited is here appropriate:

"The question in this case then would seem to be whether, if five or six men combine together to invade a man's household, and they go there armed with deadly weapons for the purpose of attacking and beating him, and in furtherance of this common design, all of the confederates being present, or near at hand, one of them gets into a difficulty with their common adversary and kills him, all may not be guilty of murder, although they did not all entertain a purpose to kill. The question, we think, must be answered in the affirmative, in the light of both principle and authority. Every man has the right to defend his house against every unlawful invasion, and to defend his person, when within it, against every and all violence without the necessity of

16 ALA.APP.—33

retreat. The experience of mankind shows that very few men will fail to respond to instinct by exercising this right, to the extent even of killing an assailant if necessary. When a mob, conspiring together unlawfully, go to a man's house to do any serious violence to his person, especially in the nighttime as here, they can expect nothing else than to meet with armed opposition, and the inference is not unreasonable that they intend nothing less than to oppose force to force, in the furtherance of their design. The natural and probable consequence of this is homicide, either of one or more of the assailants or of the party thus assailed, and such homicide, when committed by any one of the conspirators, can be nothing less than murder in all who combine to commit the unlawful act of violence, especially if they be near at hand inciting, procuring or encouraging the furtherance of the act of assault and battery."

In Shelledy's Case, 8 Iowa (8 Clarke) 478, cited in Williams' Case, supra, the defendants had taken one Wilkinson, and, after tying him with a rope, put him in a carriage and started with him to the woods, making menaces of violence against him by which he was induced to jump from the vehicle into the river, and was drowned, no effort being made to rescue him, and it was held that all of the defendants might be properly convicted of murder, although some of them designed only to commit personal violence on the deceased, without intending to kill him.

In 2. Bish. Cr. L. § 689, it is said:

"It is believed that the doctrine may be epitomized as follows: If an act is unlawful or is such as duty does not demand, and of a tendency directly dangerous to life, the destruction of life by it, however unintended, will be murder. But if the act, though dangerous, is not directly so, yet sufficiently to come under the condemnation of the law, and death unintended results from it, the homicide is manslaughter; or if it is of a nature to be lawful properly performed, and it is performed improperly, and death comes from it unexpectedly, this also is manslaughter."

And again the same author, in section 696:

"Foster states a distinction as follows: 'If an action unlawful in itself be done deliberately and with intention of mischief or great bodily harm to particulars, or of mischief indiscriminately, fall it where it may, and death ensue against or beside the original intention of the party, it will be murder. But if such mischievous intention doth not appear, which is matter of fact and to be collected from circumstances, and the act was done heedlessly and incautiously, it will be manslaughter, not accidental death, because the act upon which death ensued was unlawful.'"

"Voluntary manslaughter included all felonious homicides, less heinous than murder, which resulted directly from any unlawful force, aimed at and applied to the party slain. It was not necessary that the perpetrator should have intended or willed the death of the party. The force being unlawful, and intentionally directed against the deceased, the law pronounced the consummated act, the manslaughter, to be voluntary." McManus v. State, 36 Ala. 285.

The defendant and his confederates, on the undisputed testimony, in going to the deceased's home in the nighttime, were bent on mischief, malicious in its very nature, and of a character that was calculated to result in serious bodily harm or death; that they were armed with and intentionally used weapons in attempting to carry out the un-

lawful conspiracy, calculated to produce death or serious bodily harm, and as a direct result of this unlawful, mischievous, and malicious conduct they caused the death of the deceased. In legal effect, they voluntarily put in operation unlawful force directed against the deceased, in the natural and probable course of events, that would result in serious bodily harm or death to him, and thus caused his death, and we hold that his death thus caused was murder.

[2] The fact that the defendant was in bed with his wife and three weeks old baby when killed by the act of the defendant was of the res gestæ, and had some tendency toward showing an "act greatly dangerous to the lives of others, and evidencing a depraved mind, regardless of human life."

[3] The application of the principles stated above justifies the refusal of charges 1, 2, 4, 5, 6, and 7, requested by the, defendant. There is only one count in the indictment, and for this reason, if charge 3 was otherwise correct, it was properly refused.

[4] Charge 8 is argumentative, and was properly refused for this reason.

[5] The excerpt from the oral charge as embodied in the exception uses the terms "unlawfully or otherwise," while the charge of the court uses the terms "accidentally or otherwise." The portion of the charge to which the exception was reserved was not erroneous.

We find no error in the record.
Affirmed.