[Crim. No. 1267. First Appellate District, Division One.—December 18, 1925.]

THE PEOPLE, Respondent, v. ATTE ATTEMA, Appellant.

[1] CRIMINAL LAW—MURDER—MENTAL CAPACITY OF WITNESS—INTOXICATION—EVIDENCE.—In a prosecution for murder growing out of the killing of deceased by defendant following a dispute in the home of the latter, it cannot be said that the circumstances related by an eye-witness were improbable, or that his inability to remember the subject of the dispute, or in detail the position or movements of all the parties present, indicated a degree of intoxication rendering him incapable of receiving correct impressions of the facts, or an intention to mislead by falsely stating his recollection thereof, where the evidence of his mental condition at the time was such that the jury might reasonably conclude that he was not incapacitated in the particulars mentioned, and the weight to be given to his testimony is a question for their determination.

[2] ID.—DYING DECLARATIONS—EVIDENCE.—In such prosecution, while certain statements made by deceased shortly after the occurrence, as testified to by a witness for the prosecution, referred to certain facts connected with the subject of the dispute which were not strictly a part of the *res gestae,* and which might, upon specific objection or motion, have been rejected, the declaration made contained the material facts concerning the dispute, with the circumstances leading to the infliction of the fatal wound, which, taken with expressions of his belief that he could not recover, were sufficient to justify the admission of the statements in evidence as the dying declaration of the deceased.

[3] ID. — TRIAL — RESTRICTION OF EXAMINATION—REMARKS OF TRIAL COURT—ABSENCE OF PREJUDICE.—Remarks made by the trial court, during the course of the examination of jurors as to their qualifications, admonishing counsel against the undue prolongation of the case, but assuring them that all the time necessary will be

---

1. See 8 Cal. Jur. 280.
2. See 13 Cal. Jur. 725; 1 R. C. L. 534.

allowed, contain nothing which can reasonably be said to preju-
dice defendant or his counsel in the minds of the jury, nor does
the court thereby unduly restrict the examination.

[4] ID.—SELF-DEFENSE—BURDEN OF PROOF—INSTRUCTIONS—NONPREJU-
DICIAL ERROR.—Where, during the examination of jurors, upon
objection by defendant to the correctness of a statement by the
prosecuting attorney of the rule as to the burden of proof in
homicide cases, the trial court instructs the jury that when the
prosecution has proved the homicide beyond a reasonable doubt
and to a moral certainty, the burden shifts to the defendant to
show self-defense, if such is his defense, such instruction, being
but a partial statement of the rule, would have been prejudicially
erroneous, in view of the inferences which might have been drawn
from the proof offered by the prosecution supporting the con-
clusion that the crime was manslaughter, without the qualifying
words of section 1105 of the Penal Code, had not the court in
its instructions at the conclusion of the trial stated the rule fully
and correctly in the language of said section.

[5] ID.—INSTRUCTIONS—CONSIDERATION AS A WHOLE.—In determining
the propriety of an instruction the entire charge must be con-
sidered, and if as a whole it correctly states the law it is free
from error, notwithstanding that selected passages therefrom may
state a proposition without at the same time setting forth the
exceptions or qualifications to which it is subject in its applica-
tion to the particular case.

[6] ID.—CONTRADICTORY STATEMENTS BY DECEASED—REJECTION OF EVI-
DENCE—ERROR CURED BY SUBSEQUENT ADMISSION.—In a prosecution
for murder, although it is error for the trial court to sustain an
objection by the prosecution to the testimony of a witness that
the deceased, approximately fifteen minutes before making his
dying declaration, made certain statements to the witness tending
to contradict the facts stated in his dying declaration, and tend-
ing to show that the latter was not made under a sense of im-
pending death, such error is cured by its subsequent admission
without objection upon the recall of the witness.

[7] ID.—PREJUDICIAL MISCONDUCT OF DISTRICT ATTORNEY—COMMENT
ON DEFENDANT'S EVIDENCE.—In this prosecution for murder where,
in the course of the direct examination of defendant's wife, who
imperfectly understood the English language, and counsel for
defendant, in his efforts to elicit answers to questions which the
witness seemed not to understand, asked a leading question, an
objection to which was sustained, the prosecuting attorney re-
marked that "It is unfortunate for them to have to manufacture

---

5.  See 8 Cal. Jur. 631; 14 R. C. L. 817.
6.  See 8 Cal. Jur. 619.
7.  See 8 Cal. Jur. 254.

a story here," such remark was of a character and made under such circumstances as to be prejudicially harmful to defendant, and the harmful character thereof was not removed by the retraction of the remark or instructions to the jury to disregard it.

[8] ID.—EFFECT OF ARREST AND CHARGE—COMMENT BY DISTRICT ATTORNEY—REFUSAL OF INSTRUCTIONS—PREJUDICIAL ERROR.—In such prosecution, where the prosecuting attorney stated during the course of his argument to the jury that "A crime is committed; the officers go out and arrest the man just as they did in this case; they take him to jail; he is brought before a committing magistrate upon a complaint, and the magistrate passes upon whether or not a crime has been committed, and whether or not there is sufficient evidence to believe that the defendant charged is guilty, and if there is he holds that defendant to answer before the Superior Court for trial," it was prejudicial error to refuse defendant's requested instruction to the effect that the fact that the defendant had been arrested and charged with an offense and that an information had been filed could not be considered as evidence, and created no presumption against him.

[9] ID.—INSTRUCTIONS—MATTERS WITHOUT THE RECORD—CONFLICTING EVIDENCE.—In cases where close questions of fact are to be determined, on which the evidence is sharply conflicting, suggestions that matters without the record should be considered by the jury may reasonably be said to have had a prejudicial effect, which can only be removed by an instruction of the court.

[10] ID.—ARGUMENT—ILLUSTRATING COURSE TAKEN BY BULLET—EVIDENCE.—In this prosecution for murder, in view of the evidence in the case, the defendant was not prejudiced by the methods of the prosecuting attorneys during their argument to the jury in illustrating before the jury their contention that the shot was fired while deceased was standing in the position described by a witness, by placing themselves in certain positions before the jury, one pointing the revolver, which had been admitted in evidence, at an angle toward the body of the other, it being within the sound discretion of the trial court to determine whether such method of argument should be used, and it cannot be said that the trial court abused its discretion in permitting the illustration.

[11] ID.—SELF-DEFENSE—BURDEN OF PROOF—INSTRUCTIONS.—In such prosecution where, after instructing the jury in the language of section 1105 of the Penal Code, as to the burden of proof in trials for murder, the trial court further instructed the jury that if the prosecution in its direct case established the killing of the deceased by the defendant, and the proof tended to show that the defendant was guilty of murder either of the first or sec-

10. See 8 Cal. Jur. 972.
11. See 8 Cal. Jur. 619.

ond degrees, then the burden of proving that he took the life
of the deceased in self-defense devolved upon him, and that the
proof might shift back to the people if the testimony of the
defendant should establish that he had done the killing in self-
defense, the objection of defendant that said instruction incor-
rectly stated the law in that it is not incumbent upon the de-
fendant in such cases to prove or establish the defense, but only
to produce such evidence as will create in the minds of the jury
a reasonable doubt of his guilt of the offense charged, cannot be
sustained, where, in other instructions, the court fully instructed
as to reasonable doubt, the presumption of innocence and that
every fact and circumstance essential to establish guilt must be
proved beyond a reasonable doubt exclusive of every reasonable
hypothesis consistent with innocence.

[12] ID.—RIGHT TO MAINTAIN BY FORCE POSSESSION OF ONE'S OWN
PREMISES—ABSENCE OF DUTY TO RETREAT TO AVOID AGGRESSOR—
INSTRUCTIONS.—In such prosecution, the defendant was not preju-
diced by the refusal of the trial court to give certain proposed
instructions stating the rule as to the right of one to maintain
by force the possession of his own premises against aggression,
and that he is not bound to retreat therefrom to avoid the ag-
gressor, where such instructions were substantially given by the
court in its charge to the jury, the latter covering every material
portion of the proposed instructions.

[13] ID.—INSTRUCTIONS — DYING DECLARATIONS — EVIDENCE.—In such
prosecution, an instruction to the effect that the jury may take
into consideration the evidence concerning the dying declaration
of the deceased and in contradiction thereof what effect it had
and what was the meaning of it, assumes that the statement was
a dying declaration and does not clearly advise the jury of their
power to determine the fact and the weight and credit to be
given it, instructions as to which defendant was entitled, where
the testimony was such that from the declaration itself, together
with the circumstances under which it was made, the jury might
reasonably have inferred that the declarant was not under a sense
of impending death, or that his statement was not entitled to full
weight and credit.

[14] ID.—ACCIDENTAL SHOOTING—INSTRUCTIONS.—In such prosecution,
while defendant was entitled, on the theory of accident, to have
considered by the jury the question as to whether or not the
revolver was accidentally discharged, the mere fact that the shoot-
ing was accidental would not necessarily exculpate him, the
homicide not being excusable though caused by the accidental
discharge of the pistol while in his possession if such discharge
occurred in the course of his attempt to accomplish a felonious

12.   See 8 Cal. Jur. 314.

purpose, and the trial court properly refused defendant's requested instruction to the effect that if the jury should find that the revolver was accidentally discharged by him he should be acquitted.

[15] ID.—POSSESSION OF WEAPON—INTENT—MOTIVE — SELF-DEFENSE— INSTRUCTIONS.—In such prosecution, though the fact of the possession of the weapon was relevant in connection with the other evidence in the case in determining the question of intent to kill, motive, or self-defense, the fact of its accidental discharge was without relevancy on those issues, and an instruction not to consider such fact in determining said issues was not required, and it cannot be assumed that it was applied to them or that the refual of the instruction was erroneous.

[16] ID.—APPEAL — AFFIRMATIVE SHOWING OF ERROR — REVIEW.—The mere fact of error or misconduct does not make out a *prima facie* case for reversal which must be overcome by a showing that no injury could have resulted, but such injury must appear affirmatively after an examination of the entire cause, including the evidence, or from the nature of the evidence itself.

[17] ID.—REVIEW OF ENTIRE CASE—MISCARRIAGE OF JUSTICE.—A judgment of conviction will be reversed where the appellate court, after a careful examination of the entire cause, including the evidence, is of opinion that the misconduct of the district attorney, with the refusal of certain instructions, did as a reasonable probability have a determinative effect upon the jury in arriving at their verdict and resulted in a miscarriage of justice.

---

(1) 16 C. J., p. 929, n. 86; 17 C. J., p. 255, n. 52, p. 256, n. 60. (2) 30 C. J., p. 272, n. 25. (3) 16 C. J., p. 829, n. 34. (4) 16 C. J., p. 1053, n. 93. (5) 16 C. J., p. 1049, n. 82, p. 1050, n. 84. (6) 17 C. J., p. 337, n. 27. (7) 16 C. J., p. 917, n. 66. (8) 17 C. J., p. 300, n. 43. (9) 17 C. J., p. 300, n. 45. (10) 16 C. J., p. 894, n. 45. (11) 30 C. J., p. 390, n. 59. (12) 16 C. J., p. 1063, n. 85. (13) 16 C. J., p. 952, n. 13 New. (14) 30 C. J., p. 393, n. 95. (15) 17 C. J., p. 225, n. 58. (16) 17 C. J., p. 274, n. 22. (17) 17 C. J., p. 367, n. 86, p. 369, n. 8.

APPEAL from a judgment of the Superior Court of Santa Clara County. J. R. Welch, Judge. Reversed.

The facts are stated in the opinion of the court.

E. D. Crawford and Randall O'Neill for Appellant.

---

17.   See 8 Cal. Jur. 601.

U. S. Webb, Attorney-General, C. C. Coolidge, District Attorney, and J. P. Fitzgerald, Deputy District Attorney, for Respondent.

CASHIN, J.—Appellant was charged in the superior court in and for the county of Santa Clara with the crime of murder, was convicted of manslaughter, and from the judgment and order denying a new trial has appealed, urging as grounds for reversal that the evidence was insufficient to justify the verdict, that the conduct of the court and the prosecuting attorney was prejudicial to the substantial rights of the appellant, and assigns as error rulings of the court in admitting and rejecting evidence and in giving and refusing to give instructions.

Appellant, with his wife, Carrie Attema, was, on November 8, 1924—the date of the commission of the crime charged—residing in the city of Gilroy. On that day the funeral of their minor child took place, and among those in attendance were Patty Sheridan—with the murder of whom appellant was charged—and Terry Sheridan, his brother. After the funeral appellant and his wife returned to their home, being followed shortly thereafter by the Sheridan brothers, both of whom were, according to the evidence, under the influence of intoxicants. While all were gathered in the kitchen of the dwelling, a dispute arose between appellant and the deceased, the subject of which and the exact position and movements of the parties present are questions on which the evidence is conflicting. The surviving eye-witnesses of the affair agree that following the dispute appellant ordered the deceased and his brother to leave the dwelling, which they refused to do, whereupon appellant went to an adjoining room, the floor of which was several inches higher than the kitchen, being reached by a step from the latter, and reappeared at the door between with a revolver in his hand and repeated the order to leave. A struggle for the possession of the revolver followed in which the deceased and his brother participated. Either immediately before or during the scuffle the revolver was discharged, inflicting injuries upon deceased from which he died during the evening of the same day.

The only witness for the prosecution who was present at the time of the infliction of the injuries was Terry Sheridan, whose testimony was marked by many uncertainties, attributed by appellant to an incapacity to receive at the time correct impressions of the facts as they occurred and which, he contends, were of such a character as to destroy as a matter of law the credibility of the witness. The latter admitted the fact of his intoxication on the occasion mentioned, but gave in the main a coherent account of the events as he remembered them. While he could not recall the subject of the dispute, he testified to the fact of its occurrence, the orders by the appellant that the witness and the deceased leave the dwelling, their failure to obey, followed by appellant's act in procuring the revolver, that the weapon was discharged from the doorway mentioned while the deceased was standing within the kitchen, a distance of two or three feet from appellant, but making no aggressive movement toward the latter, and that the struggle for the possession of the weapon occurred after its discharge. With the above exceptions he was unable to recall the position or movements of those present immediately before or after the shot was fired, nor with certainty the place where the struggle occurred, whether in the kitchen or the room adjoining.

It is contended in connection with the testimony of this witness that the course of the bullet as described by the physician who performed the autopsy shows conclusively that the revolver was discharged during the struggle for its possession, the discharge, according to the testimony of appellant and his wife, following an attack by the deceased, thus refuting the testimony of the witness Sheridan and corroborating that of the defendant. According to the physician the bullet entered the body of the deceased to the right of and below the navel, its course being downward and in the direction of the median line. This testimony, however, is not inconsistent with that of the witness Sheridan, who did not testify that the deceased was facing appellant directly at the time of the shot, and does reasonably support the conclusion that appellant was then standing in the doorway mentioned some inches above the position of the deceased.

[1] We cannot say that the circumstances related by the witness were improbable, or that his inability to remember

the subject of the dispute or in detail the position or move-
ments of all the parties present indicated a degree of in-
toxication rendering him incapable of receiving correct im-
pressions of the facts or an intention to mislead by falsely
stating his recollection thereof.   The evidence of his mental
condition at the time was such that the jury might reasonably
conclude that the witness was not incapacitated in the par-
ticulars mentioned, and the weight to be given to his testi-
mony was a question for their determination (*People* v. *Wil-
lard,* 150 Cal. 543, 553 [89 Pac. 124]; *People* v. *Niins,* 183
Cal. 126 [190 Pac. 626]).

[2]   Certain statements by the injured man made shortly
after the occurrence, as testified by Neyens, a witness for the
prosecution, were admitted in evidence as the dying declara-
tion of the former.   It is urged by appellant that this testi-
mony was incompetent, in that the statements related were
not of material facts concerning the cause and circumstances
of the homicide, or made under the belief of impending
death.   While the statements referred to certain facts con-
nected with the subject of the dispute which were not strictly
a part of the *res gestae,* and which might, upon specific ob-
jection or motion, have been rejected (*People* v. *Farmer,* 77
Cal. 1 [18 Pac. 800]; *People* v. *Macfarlane,* 138 Cal. 481 [61
L. R. A. 245, 71 Pac. 568, 72 Pac. 48]; *Estate of Huston,*
163 Cal. 166 [124 Pac. 852]), the declaration made, as tes-
tified by the witness, contained the material facts concern-
ing the dispute, with the circumstances leading to the in-
fliction of the fatal wound, which, taken in connection with
expressions of his belief that he could not recover, were
sufficient to justify the admission of the statements in evi-
dence (*People* v. *Yokum,* 118 Cal. 437 [50 Pac. 686]; *People*
v. *Lee Sare Bo,* 72 Cal. 623 [14 Pac. 310]; *People* v. *Lem
Deo,* 132 Cal. 199 [64 Pac. 265]).

[3]   During the course of the examination of the jurors
as to their qualifications the court admonished counsel in the
case against the undue prolongation thereof, assuring them,
however, that all the time necessary would be allowed; and
thereafter during such examination, upon objection by ap-
pellant to the correctness of a statement by the prosecuting
attorney of the rule as to the burden of proof in homicide
cases, instructed the jury as to such rule as follows: "I am

telling you in advance that in a murder case, when the prosecution has proved the homicide beyond a reasonable doubt and to a moral certainty to your minds, then the burden shifts to the defendant to show, if his defense is self-defense, the burden shifts to him to show the self-defense,''— the admonition as to the restriction of the examination and the instruction being assigned as errors.

The remarks of the court in the first instance contained nothing which can reasonably be said to have prejudiced appellant or his counsel in the minds of the jury, nor did the court thereby unduly restrict the examination.

[4] The instruction, being but a partial statement of the rule as to the burden of proof in homicide cases (Pen. Code, sec. 1105), would, standing alone, in view of the inference which might reasonably have been drawn from the proof offered by the prosecution supporting the conclusion that the crime of manslaughter, without the qualifying words of the section, have been prejudicially erroneous (*People* v. *Elliott,* 80 Cal. 296 [22 Pac. 207]), had not the court in its instructions at the conclusion of the trial stated the rule fully and correctly in the language of the section.

[5] In determining the propriety of an instruction the entire charge must be considered, and if as a whole it correctly states the law it is free from error, notwithstanding that selected passages therefrom may state a proposition without at the same time setting forth the exceptions or qualifications to which it is subject in its application to the particular case (*People* v. *Dell Cerro,* 9 Cal. App. 764 [100 Pac. 887]; *People* v. *Warren,* 130 Cal. 678 [63 Pac. 87]; *People* v. *Besold,* 154 Cal. 363 [97 Pac. 871]).

[6] Objection by the prosecution to the testimony of the witness Butrone that the deceased, approximately fifteen minutes before the declaration admitted in evidence as his dying declaration, made certain statements to the witness tending to contradict the facts stated in the subsequent declaration mentioned, and to show that the latter was not made under a sense of impending death, was sustained. Upon the witness being recalled the testimony was admitted without objection. While this evidence was admissible in the first instance (*People* v. *Lawrence,* 21 Cal. 368), the error was

cured by its subsequent admission (*People* v. *Woody*, 48 Cal. 80; *People* v. *Ross*, 115 Cal. 233 [46 Pac. 1059]).

[7] The wife of appellant was sworn as a witness for the defense. It appears from the record that an effort was made to conduct her examination in the English language, which she understood imperfectly and in which she expressed herself with difficulty, finally making necessary the employment of an interpreter. In the course of her direct examination and before the interpreter was sworn, counsel for appellant in his efforts to elicit answers to questions which the witness seemed not to understand, asked a question which in form was leading and to which an objection upon that ground was sustained; whereupon the prosecuting attorney interjected the remark "It is unfortunate for them to have to manufacture a story here." Appellant's counsel immediately objected to the remark and, without expressly assigning it as misconduct, requested the court to admonish the attorney and to instruct the jury to disregard the remark, which request the court granted.

The foundation for appellant's complaint of the conduct mentioned was by the objection and request sufficiently laid, and it remains to be considered whether such conduct was prejudicial. The testimony as to the circumstances of the shooting was sharply conflicting, and had the version of appellant and his wife been accepted by the jury the trial might fairly have resulted in an acquittal. The statement tended to discredit the only witness for the appellant who was present at the homicide, and whose testimony in corroboration of that given by the accused might reasonably, other things being equal, have been sufficient to convince the jury that the shot was fired in self-defense, or to create in their minds the reasonable doubt which would have necessitated a verdict in his favor. The remark was of a character and made under such circumstances as to fairly support the contention that its effect was not only prejudicially harmful, but was one not removed by its retraction or the instructions of the court (*People* v. *Frank*, 71 Cal. App. 575 [236 Pac. 189]; *People* v. *Derwae*, 155 Cal. 592 [102 Pac. 266]; *People* v. *Caldwell*, 55 Cal. App. 280 [203 Pac. 440]; *Smith* v. *Rothschild & Co.*, 13 Ga. App. 293 [79 S. E. 88]).

[8] Appellant contends that he was in other respects prejudiced by the conduct of the attorneys for the prosecution.

During the argument by the latter, in referring to appellant, it was said: "A crime is committed; the officers go out and arrest the man just as they did in this case; they take him to jail; he is brought before a committing magistrate upon a complaint, and the magistrate passes upon whether or not a crime has been committed, and whether or not there is sufficient evidence to believe that the defendant charged is guilty, and if there is he holds that defendant to answer before the Superior Court for trial." Appellant excepted thereto, pointing out that the foregoing was not a statement of the evidence, and requested the court to so instruct the jury, the prosecuting attorney stating in reply, "The pleadings are in the case, and that is a part of the pleadings." The court not having instructed the jury as requested, appellant at the close of the trial offered an instruction in effect that the fact that the defendant had been arrested and charged with an offense and that an information had been filed could not be considered as evidence and created no presumption against him. This instruction was refused.

The only apparent purpose of the statement was to suggest that the jury might properly infer from the determination of the committing magistrate and the preliminary proceedings described that a crime had been committed of which appellant was guilty.

The only case called to our attention wherein the effect of the refusal of such an instruction has been considered is that of *People* v. *Delucchi*, 17 Cal. App. 96 [118 Pac. 935], in which it appeared that the proposed instruction was in substance included in others given at the trial, the court, by fair implication from its opinion, holding such an instruction to be proper.

[9] In cases where, as here, close questions of fact are to be determined on which the evidence is sharply conflicting, suggestions that matters without the record should be considered by the jury may reasonably be said to have had a prejudicial effect, which could only be removed by an instruction of the court which, in the instant case, was not given.

[10] The attorneys for the prosecution in their argument illustrated before the jury their contention that the course taken by the bullet after striking the body of deceased

proved that the shot was fired while the deceased was stand-
ing in the position described by the witness Sheridan, by
placing themselves in certain positions before the jury, one
pointing the revolver at an angle toward the body of the
other.  Appellant objected to the illustration, and requested
an instruction that the jury disregard the argument.  The
court overruled the objection, refusing the instruction.
Appellant urges that the methods of the prosecution consti-
tuted prejudicial misconduct, and that the court erred in
its ruling in that connection.

Whether the method of argument described should be
used is a question within the sound discretion of the court
(*People* v. *Simons,* 78 Kan. 852 [98 Pac. 277] ; *State* v. *Will-
iams,* 168 N. C. 191 [83 S. E. 714] ; 16 Cor. Jur. 894).
Unlike the object used in *People* v. *Durrant,* 116 Cal. 179,
221 [48 Pac. 75], for the same purpose, the revolver was here
in evidence, and the use of the body of the assistant dis-
trict attorney as a figure in the illustration cannot reason-
ably be said to have misled the jury.  We perceive nothing
prejudicial therein in view of the evidence in the case and
cannot say that the court abused its discretion in permit-
ting it.

[11]  As stated above, the court instructed the jury as
to the burden of proof in trials for murder in the language
of section 1105 of the Penal Code, adding that if the prose-
cution in its direct case established the killing of the de-
ceased by the defendant, and the proof tended to show that
the defendant was guilty of murder either of the first or
second degrees, then the burden of proving that he took the
life of the deceased in self-defense devolved upon him; fur-
ther stating that the proof might shift back to the People
if the testimony of the defendant—if he should establish
that he had done the killing in self-defense.

Appellant urges that the foregoing incorrectly stated the
law in that it is not incumbent upon the defendant in such
cases to prove or establish the defense, but only to produce
such evidence as will create in the minds of the jury a rea-
sonable doubt of his guilt of the offense charged (*People* v.
*Roe,* 189 Cal. 548, 564 [209 Pac. 560] ).  The court, how-
ever, fully instructed as to reasonable doubt, the presump-
tion of innocence and that every fact and circumstance
essential to establish guilt must be proved beyond a reason-

able doubt exclusive of every reasonable hypothesis consistent with innocence. These instructions fully covered the point urged by appellant, and have been held to be sufficient (*People* v. *Anderson,* 105 Cal. 32, 34 [38 Pac. 513]; *People* v. *Hawes,* 98 Cal. 648, 653 [33 Pac. 791]; *People* v. *McClure,* 148 Cal. 418 [83 Pac. 437]; *People* v. *Hopper,* 42 Cal. App. 505 [183 Pac. 836]; *People* v. *Bannon,* 59 Cal. App. 50 [209 Pac. 1029]).

[12] Instructions proposed by appellant and refused, stating the rule as to the right of one to maintain by force the possession of his own premises against aggression, and that he is not bound to retreat therefrom to avoid the aggressor, while proper, were substantially given by the court in its instructions to the jury, the latter covering every material portion of those proposed.

[13] The court instructed as follows with reference to the statements of the deceased admitted in evidence as his dying declaration: "You may likewise take into consideration the evidence concerning the declaration, the dying declaration of the deceased; and you may take into consideration in contradiction of that dying declaration and what effect it has and what was the meaning of it." Appellant in this connection offered instructions correctly stating that whether statements admitted as a dying declaration were in fact made under a sense of impending death, or entitled to credit and weight, were questions for the jury (*People* v. *Singh,* 182 Cal. 457, 476 [188 Pac. 987]; *People* v. *Thomson,* 145 Cal. 717, 723 [79 Pac. 435]), and that such declaration might be impeached by evidence of other statements of the deceased inconsistent therewith (*People* v. *Lawrence,* 21 Cal. 368, 372; *People* v. *Amaya,* 134 Cal. 531, 538 [66 Pac. 794]). The testimony was such that from the declaration itself, together with the circumstances under which it was made, the jury might reasonably have inferred that the declarant was not under a sense of impending death, or that his statement was not entitled to full weight and credit.

The court's instruction assumed that the statement was a dying declaration, and did not clearly advise the jury as to their power to determine the fact and the weight and credit to be given it, instructions as to which appellant was entitled.

Requested instructions by appellant, first, that if the jury found that the revolver was accidentally discharged by him such fact should not be considered in determining his intent or motive or on the issue of self-defense; and, second, the fact being found, that he should be acquitted, were refused.

[14] While appellant was entitled on the theory of accident to have the question considered by the jury (*People* v. *Hubbard*, 64 Cal. App. 27, 32 [220 Pac. 315]), as there stated, the mere fact that the shooting was accidental would not necessarily exculpate him (*People* v. *Searle*, 33 Cal. App. 228 [164 Pac. 819]; *People* v. *Sidwell*, 29 Cal. App. 12 [154 Pac. 290]; *People* v. *Seiler*, 57 Cal. App. 195 [207 Pac. 396]), the homicide not being excusable though caused by the accidental discharge of the pistol while in his possession if such discharge occurred in the course of his attempt to accomplish a felonious purpose. The second proposed instruction was, therefore, properly refused. (*Wheatley* v. *State* (Tex. Cr.), 39 S. W. 672; *State* v. *Benham*, 23 Iowa, 154 [92 Am. Dec. 417]; *Hollywood* v. *State*, 19 Wyo. 493 [Ann. Cas. 1913E, 218, 120 Pac. 471, 122 Pac. 588]; *Sanders* v. *State*, 16 Ala. App. 511 [79 South. 504]; *Ford* v. *State*, 71 Neb. 1042 [115 Am. St. Rep. 591, 98 N. W. 807].) [15] Though the fact of the possession of the weapon was relevant in connection with the other evidence in the case in determining the question of intent to kill, the fact of its accidental discharge was without relevancy on the issues mentioned; and in this connection the first proposed instruction might properly have been given. The latter fact, however, if found, was one requiring no special direction by the court as to its proper consideration by the jury; and we cannot reasonably assume that it was applied to the issues mentioned or that the refusal of the instruction was prejudicially erroneous.

Other rulings and instructions given or refused are urged as grounds for reversal, all of which we have considered, and conclude without discussion here that the rulings were correct, that the instructions complained of state the law and that those refused were fully covered by those given.

[16] It remains to be considered whether the errors and conduct heretofore discussed were of such character and effect as to require the reversal of the judgment, it being the rule that the mere fact of error or misconduct does not

make out a *prima facie* case for reversal which must be overcome by a showing that no injury could have resulted (*People* v. *O'Bryan,* 165 Cal. 55 [130 Pac. 1042]), but such injury must appear affirmatively after an examination of the entire cause, including the evidence, or from the nature of the error itself (*People* v. *Mazzurco,* 49 Cal. App. 275 [193 Pac. 164]; *People* v. *Chapman,* 55 Cal. App. 192 [203 Pac. 126]).

In the instant case, as stated, the evidence was sharply conflicting as to the acts of the participants immediately preceding the discharge of the weapon, the questions of fact to be decided being close and difficult, and with weight and credit given to the testimony for the defense unaffected by remark or argument not finding support in the evidence, might fairly have led to an acquittal; or as against such testimony, had the jury been instructed as to their power to determine whether the statements of the deceased received in evidence constituted his dying declaration, and, if so found, the weight and credit to be given thereto, the same verdict might reasonably have been the result. [17] After a careful examination of the entire cause, including the evidence, we are of the opinion that the conduct hereinbefore considered, with the refusal of the instructions mentioned, did as a reasonable probability have a determinative effect upon the jury in arriving at their verdict and resulted, the whole case considered, in a miscarriage of justice.

The judgment is reversed.


Tyler, P. J., and Knight, J., concurred.


A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 15, 1926.