Filed 10/2/23

## TO BE PUBLISHED IN THE OFFICIAL REPORTS

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO**

**APPELLATE DIVISION**

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff(s) and Respondent(s),<br><br>    v.<br><br>ROHULLAH HAMIDI,<br><br>        Defendant(s) and Appellant(s). | Appellate Division No.: CA296005<br>Trial Court Case No.:    M280287<br>Trial Court Location:    Central Division<br><br>**DECISION/STATEMENT OF REASONS (CCP § 77(d)) BY THE COURT** |

APPEAL from the October 19, 2022 judgment of conviction following jury trial entered by Superior Court, San Diego County, Robert Amador, Judge. This matter was scheduled for argument and taken under submission on July 27, 2023.

AFFIRMED.

On May 30, 2023, Appellate Division Judge Maryann D'Addezio issued an Order of Recusal and did not participate in the review or consideration of this appeal.

On May 22, 2021, Ms. Magdalena crossed the street at an unmarked crosswalk at the corner of El Cajon Boulevard and Altadena. Mr. Hamidi struck and killed her as he passed a vehicle stopped at the crosswalk in a different lane. After doing so he stopped, turned on emergency lights, and requested someone to call 911. Mr. Hamidi told law enforcement—and testified—that he did not see Ms. Magdalena until she was running into the crosswalk. There were videos from several

---

DECISION/STATEMENT OF REASONS (CCP § 77(d)) BY THE COURT

angles of the accident showing the stopped car, Mr. Hamidi driving, and Ms. Magdalena going through the crosswalk and being hit.

On March 23, 2022, Mr. Hamidi was charged with one count of misdemeanor vehicular manslaughter pursuant to Penal Code section 192, subdivision (c)(2). The alleged negligent acts were passing a stopped vehicle at a crosswalk (Veh. Code, § 21951) and failing to yield to a pedestrian (Veh. Code, § 21950). During trial, the defense requested that the trial court give CALCRIM No. 3404 as an instruction and that the trial court give an instruction regarding the meaning of "overtake and pass." The trial court denied both of those requests. The jury returned a verdict of guilty on September 27, 2022. Sentencing occurred on October 19, 2022. Mr. Hamidi timely filed his notice of appeal on November 1, 2022.

**Accident Instruction**

Appellant requested that the trial court give the instruction CALCRIM No. 3404. CALCRIM No. 3404 is a "pinpoint" instruction, and "on request, a criminal defendant is entitled to pinpoint instructions ... if the instructions are supported by substantial evidence." (*People v. Nelson* (2016) 1 Cal.5th 513, 542.) When reviewing the denial of a request for a jury instruction, doubts as to the sufficiency of the evidence are resolved in favor of the accused. (*People v. Tufunga* (1999) 21 Cal.4th 935, 944.) In doing so, we do not weigh the credibility of the witnesses, and we focus on matters that could justify the instruction rather than the "customary summary of evidence supporting the judgment." (*People v. King* (1978) 22 Cal.3d 12, 15–16.) However, when the evidence is "minimal and insubstantial ..., the court need not instruct on its effect." (*People v. Flannel* (1979) 25 Cal.3d 668, 684–685, superseded by statute on other grounds as stated in *People v. Elmore* (2014) 59 Cal.4th 121, 138.) As our Supreme Court has cautioned, "unsupported theories should not be presented to the jury" and "[t]rial courts have the duty to screen out invalid theories of conviction, either by appropriate instruction or by not presenting them to the jury in the first place." (*People v. Guiton* (1993) 4 Cal.4th 1116, 1131.)

For homicides, the accident defense stems from Penal Code section 195, which states in part: "Homicide is excusable … [w]hen committed by accident and misfortune, or in doing any other lawful act by lawful means, with usual and ordinary caution, and without any unlawful

intent." The defense requires that the defendant act lawfully. (*People v. Attema* (1925) 75 Cal.App. 642, 655.) "'Misfortune' when applied to a criminal act is analogous with the word 'misadventure' and bears the connotation of accident while doing a lawful act." (*People v. Gorgol* (1953) 122 Cal.App.2d 281, 307–308.) "An act which is expressly forbidden by law is an unlawful act and an act committed in a manner forbidden by law is committed in an unlawful manner." (*People v. Wilson* (1947) 78 Cal.App.2d 108, 114.) To be unlawful, such an act does not need to be a crime. (*Ibid*.) Here, Mr. Hamidi's conduct was not lawful.

Vehicle Code section 21951 makes it unlawful for a vehicle approaching from the rear to pass a vehicle that "has stopped . . . at any unmarked crosswalk at an intersection to permit a pedestrian to cross the roadway." In this case, it is uncontroverted that there was a vehicle stopped at an unmarked intersection, that Ms. Magdalena was crossing, and that Mr. Hamidi approached the stopped vehicle from the rear and passed the stopped vehicle. While merely driving through a crosswalk is not inherently unlawful, Mr. Hamidi's driving in this instance violated Vehicle Code section 21951the evidence presented regarding Mr. Hamidi's driving in this instance does not support an accident defense instruction.

For the defense of accident to apply, there must be substantial evidence of the accident negating the required intent. "The accident defense is a claim that the defendant acted without forming the mental state necessary to make his actions a crime." (*People v. Gonzales* (1999) 74 Cal.App.4th 382, 390, disapproved in *People v. Anderson* (2011) 51 Cal.4th 989, fn. 3 ["to the extent [it] hold[s] a sua sponte instruction on accident is required when the defense is raised to negate the intent or mental element of the charged crime"].) "In each case, the defense of accident was raised to rebut the mental element of the crime or crimes with which the defendant was charged. (*People v. Anderson* (2011) 51 Cal.4th 989, 998.) The mental state required for a violation of Penal Code section 192, subdivision (c)(2), is ordinary negligence. The mental state of negligence is "a want of such attention to the nature or probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns." (Pen. Code, § 7, subd. (2).)

**DECISION/STATEMENT OF REASONS (CCP § 77(d)) BY THE COURT**

Appellant argues that giving the instruction is justified because of Mr. Hamidi's testimony and statements that it was an "accident," that he did not see Ms. Magdalena, that it was dark, that the crosswalk was not lit, that Ms. Magdalena ran into the crosswalk, and that the stopped vehicle blocked his view. None of this evidence is substantial evidence of an accident negating ordinary negligence.

Mr. Hamidi's conclusory statements that it was an accident do not constitute substantial evidence. Such statements are impermissible lay opinion. No evidence was presented that Mr. Hamidi had any legal expertise or understanding of the legal meaning of the accident defense. "Witnesses must ordinarily testify to facts, leaving the drawing of inferences or conclusions to the jury or court." (*Froomer v. Drollinger* (1962) 201 Cal.App.2d 90, 98.) A defendant's blanket claim it was an accident is not necessarily sufficient to support the accident defense. (See *People v. Piorkowski* (1974) 41 Cal.App.3d 324.)

Mr. Hamidi's broad statements that he did not see Ms. Magdalena do not negate ordinary negligence. Multiple cases describe a driver not seeing someone in the crosswalk as negligent. "[W]here a driver did not see his victim until the instant of impact or not at all he is guilty of gross negligence or of an entire indifference to those who were using the street or highway simultaneously with him." (*People v. Flores* (1947) 83 Cal.App.2d 11, 14.) "It is also established that appellant did not see respondent in the crosswalk at that time, although she must have been there. There is sufficient evidence to justify the finding of the trial court that the appellant driver therefore was negligent." (*Hall v. Kaufman* (1940) 37 Cal.App.2d 264, 267; see also *People v. Leitgeb* (1947) 77 Cal.App.2d 764, 769–770.) Therefore, the blanket assertion about not seeing Ms. Magdalena does not negate ordinary negligence.

Mr. Hamidi's claims that it was dark also fails to negate the intent of ordinary negligence. "The driver of the vehicle is not permitted to lessen compliance with his duties because of the hour of the day or night . . .." (*Moritz v. City of Santa Clara* (1970) 8 Cal.App.3d 573, 576 [referring to Veh. Code, §§ 21950 & 21951].)

Nor does the lack of flashing lights negate the mental state of ordinary negligence, as both alleged negligent acts apply to unmarked crosswalks. (Veh. Code, §§ 21950 & 21951.)

-4-

The argument that Ms. Magdalena ran into the crosswalk is in essence a contributory negligence argument. Contributory negligence is not a defense to a crime. (*People v. Schmies* (1996) 44 Cal.App.4th 38, 46 citing *People v. Rodgers* (1949) 94 Cal.App.2d 166, 167.) "It has been repeatedly held that contributory negligence is not available as a defense or excuse for crime." (*People v. Rodgers* (1949) 94 Cal.App.2d 166, 167.) Defense cannot do an end-run around this prohibition by relabeling it an accident argument. And it is error to instruct in a way that implies to the jury that contributory negligence is a defense. (*People v. Marconi* (1931) 118 Cal.App. 683, 687–688.)

Injury to a pedestrian as a result of a driver's view being obstructed by a stopped vehicle that the driver is passing at a crosswalk is the very harm that Vehicle Code section 21951 was designed to prevent. In a civil case, this would trigger a rebuttable presumption that Mr. Hamidi was negligent. (See Evid. Code, § 669.) There is no case law establishing that Evidence Code section 669 applies to criminal cases, but even assuming the presumption does not apply, section 669 helps illustrate why Mr. Hamidi's asserted inability to see Ms. Magdalena does not negate the mental state of ordinary negligence. The analysis under section 669 requires courts to ask if the "death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent…." In light of the Legislature's enactment of Vehicle Code section 21951, a driver who passes a stopped vehicle in a crosswalk would be considered negligent because a reasonable person would know their view is obstructed at a location where pedestrians are likely to be. A driver's assertion that they did not see a pedestrian under these circumstances, even if true, does not serve to negate the driver's negligence.

As none of the evidence argued as a basis for the accident defense negated the mental state of ordinary negligence, the trial court did not err in declining to give the CALCRIM No. 3404 instruction.

This does not mean that the defense of accident can never exist in a case under Penal Code section 192, subdivision (c)(2). For example, if Mr. Hamidi's testimony was that he saw the car stopped at the intersection and attempted to stop but—because of mechanical failure or other

**DECISION/STATEMENT OF REASONS (CCP § 77(d)) BY THE COURT**

misfortune—he was unable to stop before the intersection, that would negate ordinary negligence as he was trying to exercise due care.

Appellant appears to suggest that unintentionally causing a death equates with "accidentally" causing a death, but vehicular manslaughter has never been premised on an intent to cause the death. Again, we believe that an accident instruction, in the context of a vehicular manslaughter case, may be justified when the vehicle proceeds in a manner unintended by the driver (e.g., the car goes backwards when the driver thinks it is going to go forward). Appellant never contended that he lost control of the vehicle. He drove exactly where he intended to drive. He was just surprised, due to his failure to strictly comply with the Vehicle Code, to find a pedestrian in his path. Being surprised at a negative result of driving does not equate with bearing no criminal responsibility for the driving, nor is surprise that unsafe driving resulted in a death sufficient to justify an accident defense instruction.

**Overtake and Pass Instruction**

Appellant also requested the following instruction: "To overtake and pass a vehicle, the overtaking vehicle must have been approaching the overtaken vehicle from the rear in the same lane prior to overtaking and passing." This requested instruction is not an accurate statement of law or of the legal definition of "overtake and pass." Contrary to the proposed defense instruction, Vehicle Code section 21754 describes several situations as overtaking and passing that do not require a lane change:   "The driver of a vehicle may overtake and pass to the right of another vehicle only under the following conditions: (c) Upon any highway outside of a business or residence district with unobstructed pavement of sufficient width and clearly marked for two or more lines of moving traffic in the direction of travel. (d) Upon a one-way street. (e) Upon a highway divided into two roadways where traffic is restricted to one direction upon each of such roadways…" These are descriptions of lawful driving described by the Legislature as "overtaking and passing." The trial court noted this in its decision not to give the instruction. Because the requested instruction did not

/ / /

/ / /

/ / /

accurately state the law, the trial court did not err in not giving the instruction.

The judgment of the trial court is affirmed.

Unanimously affirmed.

ALBERT T. HARUTUNIAN III
Presiding Judge, Appellate Division

FRANK L. BIRCHAK
Judge, Appellate Division

BRAD A. WEINREB
Judge, Appellate Division

Counsel for Appellant, Rohullah Hamidi:

TROY BRITT, PUBLIC DEFENDER
KATIE BELISLE, DEPUTY PUBLIC DEFENDER
451 A STREET, SUITE 900
SAN DIEGO, CA 92101


Counsel for Respondent, The People:

MARA ELLIOTT, CITY ATTORNEY
APPELLATE DIVISION
1200 THIRD AVE, SUITE 700
SAN DIEGO, CA 92101

**DECISION/STATEMENT OF REASONS (CCP § 77(d)) BY THE COURT**